James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Christopher A. Seeger
SEEGER WEISS
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
(973) 639-9100

Attorneys for Plaintiff
and the Proposed Class

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEAN VASADI, DANIELLE MOYER, JOSH SHEPHERD, LINDSEY STONEBRAKER, GREG TREACY, and SCOTT TEITSCH, individually and on behalf of all others similarly situated,<br><br>                           Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>                           Defendant. | Civil Action No.<br><br><br><br><br><br>**COMPLAINT and**<br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..............................................................................................1

II. PARTIES ..........................................................................................................8

    A. Plaintiffs .................................................................................................8

        1. South Carolina Plaintiff ................................................................8

            a. Jean Vasadi ........................................................................8

        2. Washington Plaintiffs....................................................................10

            a. Danielle Moyer ..................................................................10

            b. Josh Shepherd ....................................................................14

        3. Ohio Plaintiff ................................................................................15

            a. Lindsey Stonebraker ..........................................................15

        4. Virginia Plaintiff ..........................................................................16

            a. Greg Treacy .......................................................................16

        5. New York Plaintiff........................................................................18

            a. Scott Teitsch......................................................................18

    B. The Defendant.........................................................................................20

III. VENUE AND JURISDICTION .......................................................................20

IV. FACTUAL ALLEGATIONS ...........................................................................21

    A. The glass camera panel in the Samsung Galaxy S20............................21

    B. Consumer complaints and press response regarding the Samsung Galaxy S20...........................................................................................26

    C. Gorilla glass, the fragile phone design, and previous S7 screen shattering issues ...................................................................................32

    D. Samsung's knowledge that the glass camera panel was susceptible to shattering............................................................................................34

E.      Samsung's Response to the Galaxy S20 Defect(s) ................................................34

F.      Samsung's Warranty ....................................................................................37

G.      Any supposed "arbitration" terms and conditions were hidden from purchasers of the Samsung Galaxy S20 by deliberate design and should not limit the rights of Plaintiffs and Class members. ................................38

V.      TOLLING OF THE STATUTE OF LIMITATIONS ........................................................43

VI.     CHOICE OF LAW .......................................................................................43

VII.    CLASS ACTION ALLEGATIONS ....................................................................43

VIII.   CAUSES OF ACTION .................................................................................48

A.      Claims brought on behalf of the Nationwide Class ....................................................48

COUNT I VIOLATIONS OF 15 U.S.C. § 2301, *ET SEQ.* THE MAGNUSON-MOSS WARRANTY ACT ....................................................................48

COUNT II VIOLATIONS OF NEW JERSEY CONSUMER FRAUD ACT (N.J.S.A. § 56:8-1 *ET SEQ.*) ......................................................................50

B.      Claims brought on behalf of the New York Subclass ....................................................54

COUNT I VIOLATIONS OF THE NEW YORK GENERAL BUSINESS LAW § 349 (N.Y. GEN. BUS. LAW § 349) ..................................................................54

COUNT II FRAUD BY CONCEALMENT (BASED ON NEW YORK LAW) ........................................58

COUNT III BREACH OF EXPRESS WARRANTY ....................................................................61

COUNT IV BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (N.Y. U.C.C. § 2-314) ....................................................................62

C.      Claims brought on behalf of the Ohio Subclass ....................................................63

COUNT I VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT (OHIO REV. CODE § 1345.01, *ET SEQ.*) ..................................................63

COUNT II FRAUD BY CONCEALMENT (BASED ON OHIO LAW) ....................................................67

COUNT III BREACH OF EXPRESS WARRANTY ....................................................................70

COUNT IV BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (OHIO CODE § 1302.27) ....................................................................71

D.      Claims brought on behalf of the South Carolina Subclass ....................................................73

COUNT I VIOLATIONS OF THE SOUTH CAROLINA UNFAIR TRADE
PRACTICES ACT (S.C. CODE ANN. §§ 39-5-10, *ET SEQ.*) ........................................73

COUNT II FRAUD BY CONCEALMENT (BASED ON SOUTH CAROLINA
LAW) ...........................................................................................................................76

COUNT III BREACH OF EXPRESS WARRANTY ...................................................79

COUNT IV BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(S.C. CODE § 36-2-314) .............................................................................................80

E.    Claims brought on behalf of the Virginia Subclass ...............................82

COUNT I VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION
ACT (VA. CODE ANN. §§ 59.1-196, *ET SEQ.*) ...............................................82

COUNT II FRAUD BY CONCEALMENT (BASED ON VIRGINIA LAW)............85

COUNT III BREACH OF EXPRESS WARRANTY ...................................................89

COUNT IV BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(VA. CODE § 8.2A-212)..............................................................................................90

F.    Claims brought on behalf of the Washington Subclass .........................91

COUNT I VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT (WASH. REV. CODE ANN. §§ 19.86.010,
*ET SEQ.*) ...................................................................................................................91

COUNT II FRAUD BY CONCEALMENT (BASED ON WASHINGTON LAW)...................95

COUNT III BREACH OF EXPRESS WARRANTY ...................................................98

COUNT IV BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(WASH. REV. CODE ANN. § 62A.2-314) ....................................................99

PRAYER FOR RELIEF .........................................................................................101

DEMAND FOR JURY TRIAL ...............................................................................103

Jean Vasadi, Danielle Moyer, Josh Shepherd, Lindsey Stonebraker, Greg Treacy, and Scott Teitsch, individually and on behalf of all others similarly situated (collectively "Plaintiffs"), file this Class Action Complaint against Defendant Samsung Electronics America, Inc. ("Samsung"). This lawsuit is based upon the investigation of counsel and upon information and belief as noted. In support thereof, Plaintiffs state as follows:

## I.    INTRODUCTION

1.    In the first quarter of 2020, Samsung captured 20% of the global smartphone market share.[1] Samsung achieved this in great part by recognizing that a smartphone's functionality as a camera is critically important to consumers.[2] The Samsung Galaxy S20 and S20 Ultra phones were released on March 6, 2020, and the S20 FE (Fan Edition) was released on October 2, 2020.[3] The phones have a prominent back camera module that encases multiple camera lenses. The S20 and S20 FE have three back camera lenses, and the S20 Ultra has an even larger back camera module, and an additional camera lens, for a total of four "quad" back cameras. The S20 is a "camera-focused" phone, marketed by Samsung as the "The Complete Pro-Grade Camera Solution." The phones command a premium price of up to $1,600.00.[4]

2.    Unfortunately, the S20's back camera module's glass can shatter suddenly ("the Shattered Defect"), under normal use, with no external force applied and render the camera unusable. This issue became apparent just days upon release of the phone on the U.S. market on

---

[1]    https://www.counterpointresearch.com/global-smartphone-share/.

[2]    A chart created by Samsung's marketing department, based on data from a study conducted by the Pew Research Center, shows that 92% of smartphone users worldwide use their devices for taking photos, and 80% for sending photos. Originally cited in Complaint, No. 2:17-cv-00082-LA.

[3]    The Galaxy S20 model line includes the Galaxy S20, Galaxy S20+, Galaxy S20 Ultra 5G, Galaxy S20+ 5G, Galaxy S20 5G, Galaxy S20 Ultra/LTE, Galaxy S20 FE, and Galaxy S20 FE 5G.

[4]    The base S20 Ultra with 12GB of Ram and 128 GM of storage is $1399.00 and the 16GB/512GB version is $1549.00. The S20 FE is an expensive option at $699.00, but more affordable than the other S20 models.

March 6, 2020. On March 10, a consumer posted on Samsung's community website: "I had an unfortunate accident with my phone yesterday. I managed to crack and damage my camera lens. It wasn't dropped. Something I had in my pocket cracked the lens. Any idea when Samsung will be sending camera parts out to the repair facilities? Guess I could always send it back to Samsung for repair."[5] Then, on April 4, 2020, the topic "S20 Ultra camera crack" appeared on Samsung's community website.[6] That day, a consumer posted that he discovered that his S20 Ultra, housed in a protective case, had a shattered back screen, and could no longer zoom more than 5X due to the damage.[7] On April 20, another user wrote:

> Bought my galaxy s20 plus two weeks ago and today noticed a horizontal hairline cracked across the rear camera glass. The phone has been in a good case from day one. Never had this issue before. Phone sat on my desk most of the time, no drops or accidents...I have noticed quite a lot of people raising this same issue. Is this a design fault or material defect / issue and is there a resolution to this issue samsung? Very disappointed with this and a shame Samsung seem to have lowered there normal high standards.[8]

3.      The shattering is a known defect that has also plagued other previously released Samsung phone models. The shattering leaves behind a tell-tale "bullet hole" pattern, depicted in these photos:

---

[5]      March 10, 2020 post by consumer with username "dasingleton," https://us.community.samsung.com/t5/Galaxy-S20/S20-Ultra-camera-crack/m-p/1144596#M12875.

[6]      https://us.community.samsung.com/t5/Galaxy-S20/S20-Ultra-camera-crack/m-p/1184833.

[7] *Id.*, April 4, 2020 post by user "Oneblackwing."

[8]      Post by consumer with username "userom21qGRpHf," https://us.community.samsung.com/t5/Galaxy-S20/S20-Ultra-camera-crack/m-p/1210784#M12867.





---

9       https://www.extremetech.com/mobile/309931-some-galaxy-s20-ultra-owners-claim-camera-glass-spontaneously-shatters.

10      https://www.forbes.com/sites/paulmonckton/2020/04/30/galaxy-s20-ultra-users-report-serious-unfixable-problem-shattered-camera-lenses/?sh=15631ce57892.





---

[11]    April 4, 2020 post by "Oneblackwing," https://us.community.samsung.com/t5/Galaxy-S20/S20-Ultra-camera-crack/m-p/1184833.

[12]    https://www.androidpolice.com/2020/04/28/growing-reports-of-galaxy-s20-ultra-camera-glass-shattering.



13

4.　　As of the date of this Complaint, there have been over 660 comments on just one of Samsung's community website posts on this topic.[14] A consumer also wrote an open letter to Samsung regarding the issue, asking the company to step up and take responsibility on behalf of its consumers.[15] In addition to scores of posts on Samsung's own websites, there are countless

---

[13]　　*Id.*

[14]　　https://us.community.samsung.com/t5/Galaxy-S20/S20-Ultra-camera-crack/m-p/1144596#M12875.

[15]　　The post has been removed from Samsung's website where it was originally posted at https://us.community.samsung.com/t5/Galaxy-S20/Open-letter-to-Samsung-Regarding-Broken-rear-camera-glass-on-S20/td-p/1217740, but is retrievable via another user's Reddit post at https://www.reddit.com/r/samsung/comments/g8j9gq/s20_ultra_camera_design_flaw_breaks_easily/.

complaints posted elsewhere, including on Twitter and Reddit.[16] There have also been numerous articles devoted to the issue.[17] These complaints demonstrate that a high volume of customers report the exact same defect, manifesting under similar conditions. Customers have also been injured by the shattered glass, including one of the plaintiffs in this case.

5.      For purchasers or lessees of this particular phone, the frustration is compounded by the fact that Samsung released the phone just as the nation began to face pandemic lockdowns, social distancing, and job loss. Consumers who had paid an exorbitant price for a phone expecting a professional-grade camera experience (and perhaps more for a protective case) have been left with a device whose camera functionality has been diminished or disabled just at the time they needed it the most. In addition, due to the pandemic, customers are unable or significantly constrained in their ability to bring phones into brick-and-mortar stores for service and repair. The pandemic has also caused a shortage of replacement stock of the product. Moreover, the issue was *entirely avoidable*, as evidence suggests that Samsung has known of the defect since 2016 or even earlier, given that a similar issue plagued the company's Samsung's Galaxy S7, S7 Edge, and S7 Active smartphone models, and led to a class action lawsuit.[18] At the time, Samsung acknowledged

---

[16]     *See, e.g.*, https://twitter.com/Robin07160663/status/1252302723892097024?s=20; https://www.reddit.com/r/Galaxy_S20/comments/fxaa2z/cracked_my_s20_ ultra_screen/?utm_source=BD&utm_medium=Search&utm_name=Bing&utm_content=PSR1; https://www.reddit.com/r/samsung/comments/g8j9gq/s20_ultra_ camera_design_flaw_breaks_easily/.

[17]     *See, e.g.*, https://www.forbes.com/sites/paulmonckton/2020/04/30/galaxy-s20-ultra-users-report-serious-unfixable-problem-shattered-camera-lenses/?sh=7d9d7b6f7892; https://petapixel.com/2020/05/04/samsung-galaxy-s20-ultras-camera-glass-is-shattering-for-some-users/; https://www.sammobile.com/news/galaxy-s20-ultra-design-flaw-rear-camera-glass-break/; https://piunikaweb.com/2020/12/23/samsung-galaxy-s20-ultra-userts-complain-about-broken-rear-camera-lens; https://www.androidpolice.com/2020/04/28/growing-reports-of-galaxy-s20-ultra-camera-glass-shattering.

[18]     *Kessler v. Samsung*, No. 2:17-cv-00082-LA.

the "growing frustration and concern" to consumers due to the issue, but did nothing to actually address or resolve the issue.[19]

6.      Despite receiving numerous customer complaints pre-release and post-release describing this issue, Samsung has consistently denied responsibility, instead blaming consumers and refusing to repair or refund the devices, and/or charging an exorbitant amount of money for consumers to send back a defective device. Consumers have even reported that Samsung has told them that by reporting the issue, they have "voided the warranty."[20] Samsung only recently admitted that a pattern of complaints exists and that the issue is not the consumer's fault. Yet Samsung has not recalled the phone and continues to deny warranty claims.

7.      Having represented to consumers that the Galaxy S20 had a high-quality, professional-grade camera, Samsung was obligated to disclose that the exact opposite was true— that the phone had a known material defect in the hardware of the phone, independent of the phone's software, that manifests immediately upon use and which can render the camera unusable or would limit its functionality and potentially cause physical harm as well. No Plaintiff or reasonable consumer would have purchased or leased these smartphones and/or paid the price they paid for these smartphones had they known of this glass shattering defect. Samsung omitted information about this material defect and has completely failed its customers by continuing its pattern of putting profits over safety. Like every vendor, Samsung has duties of truthfulness and candor to its customers, including the duty to not conceal material information that the Galaxy S20 has inferior performance relative to its other models and the models of its competitors. Samsung

---

[19]      *Id.*, original cite at https://us.community.samsung.com/t5/Galaxy-S-Phones/s7-edge-rear-camera-glass-broken/m-p/14883#M6305.

[20]      *See, e.g.*, October 8, 2020 post by consumer with username "userivAKvDecjP," https://us.community.samsung.com/t5/Galaxy-S20/S20-Ultra-camera-crack/m-p/1144596#M12875.

has violated these duties of truthfulness and candor by designing, manufacturing, and selling their Galaxy S20 with a defect that Samsung was aware of.

8.     Plaintiffs bring this action individually and on behalf of all other current and former owners of the Shattered Products as defined herein. Plaintiffs and the Class seek monetary damages, business reforms, and injunctive and other equitable relief for Defendant's misconduct related to the design, manufacture, marketing, and sale of the Shattered Products, as alleged in this complaint.

## II.    PARTIES

### A.    Plaintiffs

#### 1.    South Carolina Plaintiff

##### a.    Jean Vasadi

9.     Plaintiff Jean Vasadi ("Plaintiff Vasadi") is a domiciled South Carolina citizen residing in Paris, Tennessee.

10.     In or about March 2020, Plaintiff Vasadi purchased a new Samsung Galaxy S20 Ultra phone (for the purpose of this subsection, the "Shattered Product") for approximately $1,200.00 from a Verizon store in South Carolina. At the time of purchase, the Shattered Product had a one-year warranty. Plaintiff purchased the Galaxy S20 Ultra because of the camera quality and because he wanted a phone that operated faster.

11.     Plaintiff reviewed marketing materials and advertisements concerning the Galaxy S20 Ultra prior to purchasing it. None of the representations received by Plaintiff contained any disclosure relating to any defect in the camera glass. Plaintiff was not made aware of any features of the Galaxy S20 Ultra that would render it less durable than other models. Had Defendant disclosed the inferior durability of the Galaxy S20 Ultra, preventing the full use of the Galaxy S20 Ultra and posing safety risks, Plaintiff would not have purchased it or would have paid less for it.

12.    At the time of purchase, Plaintiff's phone was activated for him by a salesperson at the Verizon store and he no longer has his product packaging. Plaintiff is not familiar with the arbitration agreement and has never seen it.

13.    In April 2020, Plaintiff dropped his Galaxy S20 Ultra and the screen broke. He then paid $250.00 for a replacement Galaxy S20 Ultra. He placed a LifeProof protective case on his phone.

14.    In approximately May or June 2020, Plaintiff placed the phone down on the table and heard a loud pop. When he picked the phone up, he noticed the camera glass was shattered. With the glass broken, Plaintiff could still take pictures, but the pictures were not very good because the glass was cracked over the lens.

15.    Plaintiff contacted Verizon right after the glass broke and was referred to the insurance company. Plaintiff did not wish to pay another $250 to replace the phone, so he took it to an independent repair shop and had the camera glass fixed. He paid $100 out of pocket for the repair.

16.    Plaintiff continues to possess his shattered phone but is worried that the glass will shatter again. Additionally, Plaintiff has observed that his Galaxy S20 Ultra camera has difficulty focusing on objects that are close since the camera glass was fixed.

17.    Plaintiff has suffered ascertainable loss as a result of Defendant's wrongful conduct associated with the camera glass including, but not limited to, overpayment and diminished value of the Samsung Galaxy S20 Ultra. Plaintiff would not have bought this phone or paid the price he did if Samsung had disclosed the Shattering Defect.

2. **Washington Plaintiffs**

    a. **Danielle Moyer**

18.    Plaintiff Danielle Moyer ("Plaintiff Moyer") is a domiciled Washington resident residing in Olympia, Washington.

19.    In or about March 2020, Plaintiff Moyer purchased a new Samsung Galaxy S20 Ultra phone (for the purpose of this subsection, the "Shattered Product") for approximately $1,600.00 from a Verizon store in Lacey, Washington. At the time of purchase, the Shattered Product had a one-year warranty. She also paid for additional insurance for the phone.

20.    Plaintiff Moyer reviewed marketing materials and advertisements concerning the Samsung Galaxy S20 Ultra prior to purchasing it. None of the representations received by Plaintiff contained any disclosure relating to any defect in the camera glass. Plaintiff was not made aware of any features of the Samsung Galaxy S20 Ultra that would render it less durable than other Samsung models. Had Defendant disclosed the inferior durability of the Samsung Galaxy S20 Ultra, preventing the full use of the Samsung Galaxy S20 and posing safety risks, Plaintiff would not have purchased it or would have paid less for it.

21.    Plaintiff paid off her Note 9 phone early and paid a fee to do so in order to buy the Samsung Galaxy S20 Ultra. She purchased the Samsung Galaxy S20 Ultra because it was supposed to be the best camera on the market. She specifically purchased the Samsung Galaxy S20 Ultra because of the advertised camera and video quality. It was important to her that she be able to take clear photos and videos.

22.    Immediately upon purchase, Plaintiff Moyer placed a Pelican protective case on her Samsung Galaxy S20 Ultra, and at all times during use, this protective case was on her phone.

23.    On July 4, 2020, Plaintiff Moyer noticed that her back camera panel was shattered after her phone fell in the grass as she was standing up from a sitting position:



Plaintiff Moyer contacted Verizon right after the glass broke and was told by Verizon that Samsung would require her to pay $250 for a replacement phone, despite the fact that her phone was still within the one-year warranty period. The procedure for returning the phone and getting a replacement was also confusing and disorganized due to the COVID-19 pandemic. She was told by Verizon that Samsung required her to return the phone and be without any phone for a period of time before receiving a replacement.

24.     Another member of Plaintiff Moyer's household has also purchased a Samsung Galaxy S20 Ultra phone that experienced the back camera glass shattering issue. The back glass on the phone broke first, then the front glass, then the camera glass got a hole that looks as if a needle poked from the inside as the hole pokes outward.

---

[21]     Photo provided by Plaintiff Danielle Moyer.

25.     Plaintiff Moyer continues to possess her shattered phone. The phone does not take clear pictures anymore and Plaintiff cannot fully zoom in for a photo because of the crack over the lenses. She does not feel safe using the phone with the broken camera glass panel. She has also been physically injured as a result of the defect, as the sharp edge debris of broken glass has cut her finger when she picked up the phone and continues to periodically poke her when she handles her phone. Her hair also gets caught in the sharp debris of broken glass when she attempts to use her phone.

26.     At the time of purchase, Plaintiff's phone was activated for her by a salesperson at the Verizon store and she was provided the box that the phone came in:



22

---

22      Photo provided by Plaintiff Danielle Moyer.

27.    Plaintiff was not aware of and did not view the bottom of the box where the arbitration agreement was hidden in small print until after her shattering experience:



28.    Plaintiff has suffered ascertainable loss as a result of Defendant's wrongful conduct associated with the camera glass, including but not limited to, overpayment and diminished value of the Samsung Galaxy S20. Plaintiff would not have bought this phone or paid the price she did if Samsung had disclosed the Shattering Defect.

---

[23]    *Id.*

### b.    Josh Shepherd

29.    Plaintiff Josh Shepherd ("Plaintiff Shepherd") is a domiciled Washington citizen residing in Auburn, Washington.

30.    On or about March 2020, Plaintiff Shepherd leased a new Samsung Galaxy S20 Ultra phone (for the purpose of this subsection, the "Shattered Product") from a Sprint/T-Mobile store in Auburn, Washington. At the time of the lease, the Shattered Product had a one-year warranty.

31.    Plaintiff Shepherd reviewed marketing materials and advertisements concerning the Samsung Galaxy S20 Ultra prior to leasing it. None of the representations received by Plaintiff contained any disclosure relating to any defect in the camera glass. Plaintiff was not made aware of any features of the Samsung Galaxy S20 Ultra that would render it less durable than other Samsung models. Had Defendant disclosed the inferior durability of the Samsung Galaxy S20 Ultra, preventing the full use of the Samsung Galaxy S20 and posing safety risks, Plaintiff would not have purchased it or would have paid less for it.

32.    Plaintiff's phone was activated for him by a salesperson at the Sprint/T-Mobile store and he no longer has his product packaging. Plaintiff is not familiar with the arbitration agreement and has never seen it.

33.    On approximately December 14, 2020, Plaintiff Shepherd noticed that his phone's back camera module was shattered. In April 2021, Plaintiff Shepherd presented his phone to Sprint for repair. Despite the fact that he purchased insurance on his phone, he believes he will have to pay approximately $31.00 out of pocket for the repair.

34.    Plaintiff has suffered ascertainable loss as a result of Defendant's wrongful conduct associated with the camera glass, including but not limited to, overpayment and diminished value

of the Samsung Galaxy S20. Plaintiff would not have bought this phone or paid the price he did if Samsung had disclosed the Shattering Defect.

### 3.    Ohio Plaintiff

#### a.    Lindsey Stonebraker

35.    Plaintiff Lindsey Stonebraker ("Plaintiff Stonebraker") is a domiciled Ohio citizen residing in Steubenville, Ohio.

36.    On or about January 2021, Plaintiff Stonebraker purchased a new Samsung Galaxy S20 FE phone (for the purpose of this subsection, the "Shattered Product") from a Verizon store in Steubenville, Ohio. At the time of the purchase, the Shattered Product had a one-year warranty.

37.    Plaintiff Stonebraker reviewed marketing materials and advertisements concerning the Samsung Galaxy S20 FE prior to leasing it. None of the representations received by Plaintiff contained any disclosure relating to any defect in the camera glass. Plaintiff was not made aware of any features of the Galaxy S20 FE that would render it less durable than other Samsung models. Had Defendant disclosed the inferior durability of the Galaxy S20 FE, preventing the full use of the Galaxy S20 FE and posing safety risks, Plaintiff would not have purchased it or would have paid less for it.

38.    Plaintiff purchased the Galaxy S20 FE because of the camera capabilities. It was important to her that she be able to take clear photos and videos. Plaintiff and her husband run a tattoo magazine website and use the Galaxy S20 FE to take pictures for the website.

39.    Plaintiff's phone was activated for her by a salesperson at the Verizon store. Plaintiff was unaware that there was an arbitration agreement and did not see it hidden in small print on the bottom of the box until after her shattering experience.

- 15 -

40.     Plaintiff Stonebraker placed a protective case on the phone after purchase. She also acquired an additional camera protector case. In February 2021, Plaintiff Stonebraker placed the camera protector on the phone. A couple of days later, she noticed the camera glass was cracked.

41.     Plaintiff presented her phone in person for repair at a Verizon store a couple days later. She was told that Samsung would not replace her phone because she had not purchased additional insurance on her phone. She was told she would have to pay out of pocket to purchase a new phone, at full price.

42.     Plaintiff does not feel safe using the phone with the broken camera glass panel. She was recently physically injured as a result of the defect, as the sharp edge of broken glass has cut her finger when she picked up the phone.

43.     Plaintiff has suffered ascertainable loss as a result of Defendant's wrongful conduct associated with the camera glass, including but not limited to, overpayment and diminished value of the Samsung Galaxy S20. Plaintiff would not have bought this phone or paid the price she did if Samsung had disclosed the Shattering Defect.

**4.     Virginia Plaintiff**

**a.     Greg Treacy**

44.     Plaintiff Greg Treacy ("Plaintiff Treacy") is a domiciled Virginia citizen residing in Virginia Beach, Virginia.

45.     In or about March 2020, Plaintiff Treacy purchased a new Samsung Galaxy S20 Ultra phone from a Sprint store in Virginia Beach, Virginia. At the time of the purchase, the Shattered Product had a one-year warranty, and he also purchased insurance on the phone at the cost of $11.00 per month. Plaintiff Treacy purchased this particular phone because he is a photographer and wanted a phone with a professional-grade camera.

- 16 -

46.    Plaintiff Treacy reviewed marketing materials and advertisements concerning the Samsung Galaxy S20 prior to purchasing it. None of the representations received by Plaintiff contained any disclosure relating to any defect in the camera glass. Plaintiff was not made aware of any features of the Samsung Galaxy S20 that would render it less durable than other Samsung models. Had Defendant disclosed the inferior durability of the Galaxy S20 Ultra, preventing the full use of the Galaxy S20 Ultra and posing safety risks, Plaintiff would not have purchased it or would have paid less for it.

47.    Plaintiff chose the Galaxy S20 Ultra solely because of the advertised superior camera capabilities.

48.    Plaintiff's phone was activated for him by a salesperson at the Sprint store. Plaintiff was unaware that there was an arbitration agreement and did not see it hidden in small print on the bottom of the box until after his shattering experience.

49.    Plaintiff Treacy placed an OtterBox protective case on the phone after purchase. In approximately August 2020, Plaintiff Treacy noticed a hairline crack in the back camera module glass. He was not handling the phone at the time of the crack and has no explanation for the crack. As he is a photographer, he would have noticed the crack immediately if he was using the phone at the time it cracked.

50.    The crack in the camera glass caused Plaintiffs' Galaxy S20 Ultra to sense that it was "dirty." The Galaxy S20 Ultra camera has a feature that can detect if the camera lens is dirty or has a fingerprint on it and will send the user a notification if it detects such things to let them know to clean the glass and try retaking the picture again. Due to the crack in Plaintiff's Galaxy S20 camera glass, Plaintiff frequently received these notifications.

51.     Plaintiff presented his phone in person for repair at a Sprint store in approximately August 2020, about two weeks after he noticed the crack. He was told by Sprint that they could not fix the glass and that he would need a new phone. Plaintiff contacted Sprint again and they advised him to pursue getting a new phone through his phone insurance. He contacted the insurance company and despite having purchased insurance, he had to pay $250.00 out of pocket to purchase a replacement phone.

52.     Plaintiff has suffered ascertainable loss as a result of Defendant's wrongful conduct associated with the camera glass, including but not limited to overpayment and diminished value of the Samsung Galaxy S20. Plaintiff would not have bought this phone or paid the price he did if Samsung had disclosed the Shattering Defect.

**5.      New York Plaintiff**

**a.      Scott Teitsch**

53.     Plaintiff Scott Teitsch ("Plaintiff Teitsch") is a domiciled New York citizen residing in Ballston Spa, New York.

54.     On or about March 9, 2020, Plaintiff Teitsch purchased a new Samsung Galaxy S20 Plus 5G phone (for the purpose of this subsection, the "Shattered Product") for approximately $1,200.00 from an AT&T store in Albany, New York. At the time of the purchase, the phone had a one-year warranty.

55.     Plaintiff Teitsch reviewed marketing materials and advertisements concerning the Samsung Galaxy S20 prior to purchasing it. None of the representations received by Plaintiff contained any disclosure relating to any defect in the camera glass. Plaintiff was not made aware of any features of the Samsung Galaxy S20 Plus 5G that would render it less durable than other Samsung models. Had Defendant disclosed the inferior durability of the Galaxy S20 Plus 5G,

preventing the full use of the Galaxy S20 Plus 5G and posing safety risks, Plaintiff would not have purchased it or would have paid less for it.

56.    The main reason Plaintiff purchased the Galaxy S20 Plus was because of the 5G availability and the touted capabilities of the camera. Plaintiff takes a lot of pictures and videos, so the onboard storage meant he would not be limited in taking and storing a large quantity of pictures. Plaintiff's understanding was that the Samsung picture/video quality was superior to Apple, so he purchased the Galaxy S20 Plus to replace his iPhone XS Max.

57.    Plaintiff activated his phone and has his product packaging. Plaintiff was unaware of the arbitration agreement and did not see it hidden in fine print on the bottom of the box until after his shattering experience.

58.    In approximately April 2020, Plaintiff's back camera module glass broke. At the time, the phone was resting on a surface being charged, and Plaintiff noticed the glass was broken when he picked the phone up.

59.    When the camera glass broke, Plaintiff could still take pictures, but the pictures were distorted. Photos that were taken at night were essentially useless due to the glare from the broken glass. With the glass broken, Plaintiff could not use the Galaxy S20 Plus for one of the main reasons he bought it.

60.    Plaintiff contacted AT&T in April 2020. AT&T told him the breakage was his fault and that they could not help him. Plaintiff next contacted Samsung Service and told them that the glass was broken. Samsung told them they would replace the phone under warranty and to send the phone back for a replacement. Plaintiff sent his broken phone to Samsung on July 6, 2020. He had to purchase another phone out of pocket for approximately $1,000.00 as he was reliant on a phone for work. On July 16, 2020, Plaintiff received a bill from Samsung for repairing his phone,

despite the fact that they claimed they would honor his warranty. He was told he would have to

pay the bill in order to get his phone back. He paid the bill and his phone eventually was returned

but it took approximately two weeks. Plaintiff does not know if the phone that was returned was

his original phone or a refurbished phone.

61.     Plaintiff has suffered ascertainable loss as a result of Defendant's wrongful conduct

associated with the camera glass, including but not limited to overpayment and diminished value

of the Samsung Galaxy S20. Plaintiff would not have bought this phone or paid the price he did if

Samsung had disclosed the Shattering Defect.

**B.      The Defendant**

62.     Defendant Samsung Electronics America, Inc., the designer, manufacturer, and

vendor of Samsung smartphones, is a corporation existing under the law of the State of New York

and is headquartered at 85 Challenger Rd., Ridgefield Park, New Jersey 07660. Defendant

Samsung regularly conducts business in this District and throughout the United States.

### III.      VENUE AND JURISDICTION

63.     This Court has original jurisdiction over the subject matter of this action pursuant

to 28 U.S.C. §§ 1331 & 1332 because the Defendant maintains its headquarters in New Jersey.

There is also complete diversity of citizenship in this case because Samsung is a citizen of a

different state than any of the plaintiffs and the amount in controversy exceeds the sum of $75,000.

28 U.S.C. § 1332. This Court also has supplemental jurisdiction over the state law claims because

those claims are integrally related to the federal claims and form part of the same case and

controversy under 28 U.S.C. § 1367.

64.     The Court also has jurisdiction over this action pursuant to the Class Action

Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class Member is of diverse

citizenship from Defendant, there are more than 100 Class members, and the aggregate amount in

controversy exceeds $5,000,000, exclusive of interests and costs. Subject matter jurisdiction also arises under the Magnuson-Moss Warranty Act claims asserted under 15 U.S.C. § 2301, *et seq.*

65.     This Court has personal jurisdiction over Samsung by virtue of Samsung being headquartered in this District, Samsung transacting and doing business in this District, and because Samsung intentionally availed itself of the laws of New Jersey by transacting a substantial amount of business throughout the State and this District. Defendant has engaged in statutory violations and common law tortious conduct in New Jersey and in this District.

66.     Venue is proper pursuant to 28 U.S.C. § 1391(a) & (b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is proper pursuant to 18 U.S.C. § 1965(a) & (b) because Samsung is headquartered in this District and transacts affairs in this District, and the ends of justice require it. Venue is also proper in this District under 28 U.S.C. § 1391(b)(1) because a substantial portion of the events giving rise to the claims alleged in this Complaint took place within this District.

## IV.     FACTUAL ALLEGATIONS

### A.     The glass camera panel in the Samsung Galaxy S20

67.     Samsung first released the Samsung Galaxy S20 and S20 Ultra on March 6, 2020. These phones are encased in "Gorilla Glass."[24] The S20 has a back glass camera panel that encases three camera lenses, and the S20 Ultra has a larger back camera glass module, and an additional camera lens, for a total of four "quad" camera lenses. The back camera modules are depicted in this photo (the S20 is on the left and the S20 Ultra is on the right):

---

[24]     https://www.samsung.com/us/mobile/galaxy-s20-5g/models/.



25

Camera quality was at the forefront of Samsung's consumer marketing of the S20. The Galaxy S20 line of phones are all marketed as having a "high-resolution camera," "Hybrid Optic Zoom," and "Space Zoom."[26] The S20 Ultra has the highest camera capability, featuring a 108 MP high resolution camera, 10X optic zoom, and up to 100X Space Zoom.[27] The S20 Ultra's back camera panel includes Ultra Wide, Wide-angle, Telephoto and DepthVision camera lenses:



28

---

25      *Id.*
26      *Id.*
27      *Id.*
28      https://www.samsung.com/us/business/products/mobile/phones/galaxy-s/galaxy-s20-ultra-5g-128gb-unlocked-sm-g988uzkaxaa/.



**Galaxy S20 Ultra 5G**

Quad camera

**1 12MP Ultra Wide Camera**

- Pixel size: 1.4μm
- FOV: 120°
- F.No (aperture): F2.2

**2 108MP Wide-angle Camera**

- PDAF, OIS
- Pixel size: 0.8μm (12MP 2.4μm)
- FOV: 79°
- F.No (aperture): F1.8
- 1/1.33" image sensor size

**3 48MP Telephoto Camera**

- Pixel size: 0.8μm (12MP 1.6μm)
- FOV: 24°
- F.No (aperture): F3.5

**4 DepthVision Camera**

Space Zoom

- Hybrid Optic Zoom 10x
- Super Resolution Zoom up to 100x

OIS (Optical Image Stabilization)

Tracking AF                                    29

68.    The back camera panel protrudes out from the phone, as shown in this side view:



30

<hr>

29    https://www.samsung.com/us/mobile/galaxy-s20-5g/specs/.
30    https://www.samsung.com/us/mobile/galaxy-s20-5g/models/.

- 23 -

69.    The S20 phones were not just marketed as having high camera capability, but were specifically marketed as having professional-grade cameras. Marketing for the S20 indicated the phone was "The Complete Pro-Grade Camera Solution."[31] The S20 Ultra's camera and lens technology was touted as "groundbreaking": "Make your world bigger with the groundbreaking 100x Space Zoom on the Galaxy S20 Ultra. Capture crisp photos and video in low light without a flash using Bright Night. With a full kit of pro lenses, you can capture pro quality photos and video, without hiring a big production crew."[32] With the Galaxy S20 Ultra, you can "Find shots you never thought possible":

## Find shots you never thought possible



*Image simulated for illustrative purposes.
*Images captured by Galaxy S20 Ultra. Actual UI may differ. 100X Space Zoom only available on Galaxy S20 Ultra.

---

[31]    https://www.samsung.com/us/business/products/mobile/phones/galaxy-s/galaxy-s20-ultra-5g-128gb-unlocked-sm-g988uzkaxaa/.
[32]    https://www.samsung.com/us/business/products/mobile/phones/galaxy-s/galaxy-s20-ultra-5g-128gb-unlocked-sm-g988uzkaxaa/.

The Galaxy S20 and Galaxy FE were also marketed as professional grade. The Galaxy FE was touted as having the "same pro-grade, triple lens camera as Galaxy S20 5G."[33]

70.    Samsung also markets the S20's video quality. For example, the S20 Ultra is marketed as being able to "Change the way you capture content with 8K Video Snap":



71.    The "8K Video Snap" experience allows the user to capture 33MP photos from 8K video:



---

[33] https://www.samsung.com/us/mobile/galaxy-s20-5g/s20-fe-5g/.

72.     Samsung also markets the ability of the S20 phones' camera lens' to "Pull in more light":



**B.    Consumer complaints and press response regarding the Samsung Galaxy S20**

73.     Despite being marketed as having a professional grade, high quality camera and video, consumers immediately posted complaints about the camera glass module shattering after the release of the Galaxy S20. This breakage, in addition to diminishing the value of the phone, can also further diminish its value and utility, by impacting the camera's functionality, including its photo and video quality, focus, zoom and other features. Just four days after the phone went on sale, user "dasingleton" posted on Samsung's community website:

> I had an unfortunate accident with my phone yesterday. I managed to crack and damage my camera lens. It wasn't dropped. Something

---

34      https://www.samsung.com/us/mobile/galaxy-s20-5g/models/.

I had in my pocket cracked the lens. Any idea when Samsung will be sending camera parts out to the repair facilities? Guess I could always send it back to Samsung for repair.[35]

This complaint was followed by numerous additional complaints on Samsung's community website.[36]

74.   On March 20, 2020, consumer "userQ7FmqovjY7" posted:

I also had something like that happen. I received my phone on the 3rd of March and 3 days later I set it down on a wood table and picked back up and the something happened. I called Samsung and the wanted me to send my phone in and they would fix it but that would take up to 2 weeks. I bought the protection plan on it but they are giving me the runaround and still haven't done anything.[37]

75.   On April 4, 2020, consumer "Oneblackwing" posted:

Have my s20 in an Otterbox defender, it was sitting on my desk face down. Used it last night to take some up close shots of my garden.

Go to take a picture this morning, and see this. https://i. imgur.com/ffqt58Fm.jpg

I live alone, and this makes it so my phone cannot zoom more then 5x.

Local repair (an hour away) is out of stock of repairs until Covid passes.

76.   On April 12, 2020, consumer "userNJ5SJcyQia" posted:

Out of nowhere I looked at my camera and the glass is cracked. In the case at that. I didn't even drop it. Like what the heck!!! I see there are others with the same issue. What is the resolution?[38]

---

[35]   https://us.community.samsung.com/t5/Galaxy-S20/S20-Ultra-camera-crack/m-p/1144596#M12875.

[36]   https://us.community.samsung.com/t5/Galaxy-S20/S20-Ultra-camera-crack/m-p/1184833.

[37]   https://us.community.samsung.com/t5/Galaxy-S20/S20-Ultra-camera-crack/td-p/1293184/page/41.

[38]   https://us.community.samsung.com/t5/Galaxy-S20/S20-Ultra-camera-crack/m-p/1210784#M12867.

77.    On April 22, 2020, consumer "user2H4g8f6YWd" posted:

I have the same problem. With in less than a week my glass on the camera has broke. Phone has always been in a case and not dropped. I also have never had it in my pocket. There is absolutely no reason this should of happened. The camera is the reason I decided on the S20 plus. This will be my last S phone, I have been a customer since the s4.[39]

78.    On May 7, 2020, consumer "userYqdl4aVEKb" posted:

Haven't dropped the phone once, has been in a case with front screen protector since day 1. Got the phone on the 25th of April.

Not sure how this happened and been reading bout other users experiencing this same issue.

Extremely disappointed in the response of the rep saying "physical damage" yet it's obvious that this is a wide spread issues as others have dealt with it. Instead of owning up to it and saying "yee we messed up with the materials on the backside, let's take care of it" they are just trying to sweep it under rug like Nintendo did with it's Joycons.

This become wide enough, wonder if there will be a class action lawsuit.

It made me question for a second, would iPhone users be told they are too and if not. That 12 looks good right about now. Real shame this is the outlook the company has taken.

Been a uuuuge fan of the Galaxy line for a bit.[40]

79.    On May 13, 2020, consumer "Jack01" posted:

Mine cracked immediately as well. It was within the first week, and I'm not sure if it was like that when I got it. Was using the Samsung leather case with it, but switched to something with more protection as soon as I noticed the crack. This really stinks, it has always been babied and I never dropped it. It's the ultra and I have never charged it wireless at this point.

---

[39]    https://us.community.samsung.com/t5/Galaxy-S20/S20-Ultra-camera-crack/m-p/1144596#M12875.

[40]    Note that it appears the post may have been edited by a Samsung website administrator. https://us.community.samsung.com/t5/Galaxy-S20/S20-Ultra-camera-crack/m-p/1184833.

I really hope Samsung steps up and fixes these, because I love the phone other than this. If there is a class action lawsuit that you know of, please let me know.

80.    On May 13, 2020, consumer "Samsung_MwwRDme" posted:

My wife had the same thing happen to her s20 ultra. At first samsung told us they would fix it, now they are saying they won't and that it will be over $100 to fix. I think we've paid enough already to expect this phone not to crack in our pockets, especially with a protective case on it.

81.    On May 31, 2020, consumer "userV5kySrxxkX" posted:

I've had the same issue, it's been in a case that I've used for every other galaxy and none of them ever broke. The lens on the camera had a hairline break within a couple of weeks of me owning it…[41]

82.    On June 10, 2020, consumer "userjwjx77AMJP" posted:

I woke up to the same issue! Went to bed and it was fine. Woke up to find it broken. Phone is less than a month old![42]

83.    By June 2020, just three months after the phone's release, the complaints were so prolific that a consumer posed this question:

Does every single Galaxy s20 Ultra get the crack in the back of the camera? Will a camera protector help it from doing so? I use an otterbox defender series pro case and so far, so good. I'm getting my fingers crossed that it doesn't happen.[43]

84.    As of the date of this Complaint, there have been over 660 replies on just one of Samsung's community website posts on this topic.[44] A consumer also wrote an open letter to Samsung, compiling all of Samsung's community posts regarding the issue:

---

[41]      https://us.community.samsung.com/t5/Galaxy-S20/S20-Ultra-camera-crack/m-p/1144596#M12875.

[42] *Id.*

[43]      https://us.community.samsung.com/t5/Galaxy-S20/S20-Ultra-camera-crack/m-p/1217736#M8543.

[44]      https://us.community.samsung.com/t5/Galaxy-S20/S20-Ultra-camera-crack/m-p/1144596#M12875.

Dear Samsung. For such a top of the line, top tier phone there are numerous reports on how easily the rear camera glass is breaking. This is not due to mishandling or abuse of the phone. Please do not ignore your customers and consumers, this is not a cheap device and you are doing nothing to help your reputation and more distancing us that can afford a phone like this. It has left nothing but a sour taste in our mouths. Here's just a few links I can find regarding this very issue on your own Site, surely you cannot dismiss that there isn't a quality issue with your phone. And just use the blanket statement that you not going to cover physical damage.

https://us.community.samsung.com/t5/Galaxy-S20/Broken-rear-camera-glass-s20-ultra/td-p/1154527

https://us.community.samsung.com/t5/Galaxy-S20/Back-camera-on-s20-ultra-broken-When-i-woke-up-dont-k...

https://us.community.samsung.com/t5/Galaxy-S20/Camera-glass-broken-for-no-reason/m-p/1212657#M8299

https://us.community.samsung.com/t5/Galaxy-S20/Camera-glass-s20-ultra/td-p/1209573

https://us.community.samsung.com/t5/Galaxy-S20/Camera-glass-s20-ultra/m-p/1212659#M8301

https://us.community.samsung.com/t5/Galaxy-S20/Do-not-buy-the-S20-Ultra/m-p/1212674#M8309

https://us.community.samsung.com/t5/Galaxy-S20/S20-Ultra-Camera-Cracked/td-p/1184833

https://us.community.samsung.com/t5/Galaxy-S20/2-weeks-old-and-the-rear-camera-glass-has-cracked/td-...

https://us.community.samsung.com/t5/Galaxy-S20/S20-ultra-broken-rear-camera-glass/m-p/1217736#M8543

This phone is not fit for purpose you need to step up and take responsibility.

Sincerely everyone and I, that has this issue.[45]

---

[45]    The post has been removed from Samsung's website where it was originally posted at https://us.community.samsung.com/t5/Galaxy-S20/Open-letter-to-Samsung-Regarding-Broken-rear-camera-glass-on-S20/td-p/1217740, but is retrievable via another user's Reddit post at

85.    There have also been numerous articles dedicated to the issue since the phone's release. On April 29, 2020, an "Extreme Tech" article entitled "Some Galaxy S20 Ultra Owners Claim Camera Glass Spontaneously Shatters" was posted.[46] The article suggested that the S20 Ultra's oversized camera module was simply too big and shatters because hardened glass gets weaker as panel size increases.[47] The article also discussed how damage to the glass renders the cameras "essentially useless" and how Samsung has given its customers the "cold shoulder."[48] On April 30, 2020, Forbes magazine published an article entitled "Galaxy S20 Ultra Users Report Serious Unfixable Problem."[49] On May 4, 2020, an article entitled "Samsung Galaxy S20 Ultra's Camera Glass is Shattering for Some Users."[50]

86.    The issue has also been documented on YouTube. For example, on April 29, 2020, a video documented reports of this issue.[51] Another video on May 1, 2020 noted multiple reports regarding glass shattering.[52] There are also videos demonstrating camera glass replacement for the S20 due to the shattered glass.[53]

---

https://www.reddit.com/r/samsung/comments/g8j9gq/s20_ultra_camera_design_flaw_breaks_easily/.

[46]    https://www.extremetech.com/mobile/309931-some-galaxy-s20-ultra-owners-claim-camera-glass-spontaneously-shatters.

[47]    *Id.*

[48]    *Id.*

[49]    https://www.forbes.com/sites/paulmonckton/2020/04/30/galaxy-s20-ultra-users-report-serious-unfixable-problem-shattered-camera-lenses/?sh=1b726b557892.

[50]    https://petapixel.com/2020/05/04/samsung-galaxy-s20-ultras-camera-glass-is-shattering-for-some-users/.

[51]    https://www.youtube.com/watch?v=nVmgpUXhyGg.

[52]    https://www.youtube.com/watch?v=DgOqOwrBXy8.

[53]    https://www.youtube.com/watch?v=Q_ePNYWDFpM.

C.    **Gorilla glass, the fragile phone design, and previous S7 screen shattering issues**

87.    Samsung's Galaxy S20 phone is unreasonably fragile in design. The phone uses Gorilla Glass on the back of the phone.[54] The glass covering the back, outward-facing camera lens is prone to shattering spontaneously with normal use. The shattering occurs with no external force applied, and even when the phone is housed in a protective case.

88.    Gorilla Glass is a brand of specialized toughened glass developed and manufactured by Corning.[55] Gorilla Glass has gone through many iterations. The first generation of the product launched in 2007, followed by Gorilla Glass 2 in 2012, and Gorilla Glass 3 in 2013.[56] Gorilla Glass 5 was first released in 2016, followed by Gorilla Glass 6 in approximately 2019.

89.    The basic process is the same for each generation, using an "ion-exchange process."[57] This is essentially a strengthening process where the glass is placed in a bath of molten salt measuring 400 degrees Celsius (752 degrees Fahrenheit), according to its manufacturer Corning. Potassium ions in the bath create a "layer of compressive stress" on the glass, basically giving it added strength.[58] Gorilla Glass 6 is equivalent to Gorilla Glass 5 in scratch resistance but is designed to survive multiple drops from even greater heights—according to Corning's press materials, it can survive, on average, 15 drops onto rough surfaces from a height of one meter and is up to "2x better" than Gorilla Glass 5.[59]

90.    Indeed, Gorilla Glass is designed to be strong. There have been several drop tests that suggest that shattering of the kind seen in the bullet hole pattern does not take place due to

---

[54]    https://www.sammobile.com/news/galaxy-s20-ultra-has-gorilla-glass-6-on-the-front-and-back/.
[55]    https://techwelkin.com/gorilla-glass-vs-tempered-glass.
[56]    https://www.androidauthority.com/gorilla-glass-comparison-886866/.
[57]    *Id.*
[58]    *Id.*
[59]    *Id.*

external force. For example, on March 2, 2020, CNet conducted a drop test using the Galaxy S20 Ultra which damaged the glass on the exterior of the phone, but not the camera glass. This suggests the tell-tale pattern of damage cannot be attributed to the consumer dropping the phone.

91.    In the move away from conventional glass, towards supposedly stronger glass created through the use of heating glass to high temperatures, there have been incidents of spontaneous glass breakage.[60]

92.    A similar issue plagued the S7. After the release of Samsung's earlier generation S7 smartphone, customers posted accounts of spontaneous shattering of the camera lens in Samsung's online community and in other online forums.[61] Samsung eventually acknowledged an "unexplained issue" but did not provide a solution, dismissing the reported events as isolated occurrences:



⬤ Solution
Accepted by SamsungShan (Comet)
07-27-2016 03:32 PM
Re: s7 edge rear camera glass broken

Hi, everyone. I wanted to personally thank you for being active members of the community and want you to know that we understand this growing frustration and concern over something that seems quite unexplained.

We do see there are quite a few interesting theories, and although we cannot speculate on each individuals' situation, we would like to assure you that Samsung does take many different conditions into consideration when constructing our devices. Our desire is to always make high quality products for our customers and we strive to be leaders in quality. Although some unforeseen things may come, we do believe this is an isolated occurrence and do not want to place blame on anyone.

The best way to determine what caused your specific issue, is to send the unit in for service so that Samsung technicians can look at it firsthand.  Feel free to reach out to us on any channel:

@SamsungSupport on Twitter or

Samsung Support on Facebook or

By phone at 1-800-Samsung.

We appreciate your being a loyal Samsung customer.

[62]

---

[60]     https://www.constructionspecifier.com/spontaneous-glass-breakage-why-it-happens-and-what-to-do-about-it/.

[61]     Cited in *Kessler v. Samsung* Complaint, No. 2:17-cv-00082-LA.

[62]     July 27, 2016 post by Samsung Support, https://us.community.samsung.com/t5/Galaxy-S-Phones/s7-edge-rear-camera-glass-broken/m-p/14883#M6305.

**D.    Samsung's knowledge that the glass camera panel was susceptible to shattering.**

93.    Samsung was aware, and had exclusive knowledge since at least 2016, that its glass screen was prone to shattering.

94.    Samsung knew, via repair records, complaints on its community webpage, publicly available complaints and articles, blogs monitored by Samsung, and via industry sources, that the phone was defective. Samsung was aware of many reports from customers describing defective camera Glass in the S7 phone, and thus has been aware well before the release of the S20, of the tendency of the rear camera module's glass to shatter. Samsung admitted on July 27, 2016, of consumers "growing frustration" regarding cracking incidents in the Samsung Galaxy S7.[63] Samsung was also aware that a class action lawsuit was filed in January 2017 regarding the shattering by a Plaintiff whose camera glass made an audible "popping sound" and shattered, eight days after purchase, while the phone was resting on a counter.[64]

95.    Samsung engages in rigorous pre-release testing, so it would have been aware of the defect well prior to the release of the Samsung Galaxy S20. Dozens of engineers are provided with pre-production units in the months leading up to a product launch and report back their experiences to Samsung. Samsung's pre-release testing would have revealed the glass shattering issue, yet Samsung's marketing for the Galaxy S20 did not reveal this issue and instead promised consumers a high-quality professional camera experience. Marketing to this day reveals nothing regarding the glass shattering issue.

**E.    Samsung's Response to the Galaxy S20 Defect(s)**

96.    Samsung's response to the widespread issue with the Galaxy S20 has been dismal. Samsung responded to the original March 10, 2020 consumer complaint on its forum by merely

---

[63]    *Id.*

[64]    Complaint, *Kessler v. Samsung*, No. 2:17-cv-00082-LA, Dkt. 1.

recommending the consumer bring his phone into Samsung or a "UBreakIFix" repair shop for a repair.[65] Then, on April 20, 2020, Samsung replied to a post by user "userom21qGRpHf" on April 20 indicating that the issue was not covered by warranty and that they were "waiting for a response in regards to any possible defects":

 **BlackOnyx6** Product Expert    OPTIONS ⋮

04-20-2020 02:37 PM in Galaxy S20

Hello @userNJ5SJcyQia ,

Im so sorry to hear that your camera len has a crack. As the previous user stated it is repairable but its not covered under warranty. I have taken record of you and other users that are reporting the same issue. I am waiting for a response in regards to any possible defects. For the time being please use the link that Im providing to report the issue and receive a ticket number for reference. The link gives two option mail in service or going into a physical location. The device needs to be inspected and provided a ticket number. You will recieve a repair cost but you can decline for the time being.

For Samsung Care Authorized locations near you:

https://www.samsung.com/us/support/service/

Hope this was helpful!
Be sure to click " ✓ Accept as Solution"so others with the same issue can find the  resolution.

66

---

[65]    https://us.community.samsung.com/t5/Galaxy-S20/S20-Ultra-camera-crack/m-p/1144596#M12875.
[66]    https://us.community.samsung.com/t5/Galaxy-S20/S20-Ultra-camera-crack/td-p/1293184/tab/html/page/51?CID=afl-ecomm-cjn-cha-092118-53060&cjevent=f98f014389ff11ea820800590a180512.

97.     Samsung has also deleted consumer complaints, including an open letter to Samsung, regarding the issue.[67] On December 20, 2020, Samsung responded to a user's complaint about the issue by identifying a potential cause, stating that the camera glass breaking was due to "pressure buildup beneath the glass" and was not the fault of the consumer:

 **SJohnson**  Samsung Care Ambassador                OPTIONS ⋮

12-20-2020 03:25 AM (Last edited 12-20-2020 03:26 AM ) in Galaxy S20

This happened to one of our ambassadors. After many complaints about the same issue, we found out that it has to do with pressure buildup underneath the glass and not customers banging it against something. You could reach out to customer support and see what they say. If Samsung doesn't honor the repair then an alternate route would be to send it in with a deductible of $100 if you are on Samsung Care plus or take it to your nearest Ubreakifix

[68]

98.     Remarkably, even after this post by Samsung, acknowledging the issue was rooted in a single identifiable cause, and attributable to Samsung rather than consumers, Samsung still (1) failed to initiate a recall, (2) deny warranty claims; and (3) offer no meaningful solution to the issue. Samsung reportedly requires that a consumer pay $400.00 to send the phone back to investigate the issue if the consumer did not pay purchase "Samsung care," and even consumers who paid extra for this product protection plan are required to pay $100.00 to return their phones.

---

[67]     The open letter has been removed from Samsung's website where it was originally posted at      https://us.community.samsung.com/t5/Galaxy-S20/Open-letter-to-Samsung-Regarding-Broken-rear-camera-glass-on-S20/td-p/1217740, but is retrievable via another user's Reddit post at https://www.reddit.com/r/samsung/comments/g8j9gq/s20_ultra_camera_design_flaw_breaks_easily/.
[68]     https://us.community.samsung.com/t5/Galaxy-S20/S20-Ultra-camera-crack/m-p/1598390#M29814.

For consumers in the best of times, this is cost-prohibitive, and certainly more so during a pandemic. Even if a consumer manages to send their phone in, Samsung then merely replaces a defective S20 with another defective S20. Consumers are also reporting that Samsung asks to keep their phone for a lengthy amount of time, and that UBreak is out of replacement stock. Consumers are left with a broken phone that is greatly reduced in value, with an unusable camera, or one with just partial functionality.

F.    **Samsung's Warranty**

99.    Defendant issues to all original purchasers and lessees, including Plaintiffs and the other Class members, a written manufacturer's warranty. This Express One-Year Limited Warranty states that Samsung "*During the applicable warranty period, provided the Product is returned in accordance with the terms of this Limited Warranty, SAMSUNG will repair or replace the Product, at SAMSUNG'S sole option, without charge.*"[69] Because the Galaxy S20 Ultra devices have been sold in the United States for just over a year, the Limited Warranty remains in effect for the majority of Class members.

100.    Rather than complying with the terms of its Limited Warranty, Samsung is blaming its consumers for their broken phones. Plaintiffs and members of the class are left with no option but to pay for an expensive repair or replacement themselves.

101.    Samsung knew, or at least should have known, of the defects at the time of sale or lease of the Samsung Galaxy S20. Plaintiffs and Class members, however, had no such knowledge. The defects in the Samsung Galaxy S20 were and are latent in nature because they are not obvious or ascertainable upon reasonable examination and they were not disclosed in any advertising or marketing materials.

---

[69]    https://www.samsung.com/us/support/warranty/.

102.    Despite having more than adequate opportunity to successfully remedy the defect(s) in the Galaxy S20, Samsung has failed to do so, and in many instances has instead merely replaced a defective Galaxy S20 with another Galaxy S20.

103.    Samsung concealed, and continues to conceal, the fact that the Galaxy S20 is defective at the point of sale, as it contains rear camera glass that is prone to shattering spontaneously. Despite its knowledge of this defect, Samsung continues to sell defective S20 phones. Therefore, Plaintiffs did not discover and could not have discovered this defect through reasonable diligence.

104.    Plaintiffs and the other Class members reasonably relied on Samsung's warranties regarding the quality, durability, and other material characteristics of their Galaxy S20 phones, including, but not limited to, the representation that the Galaxy S20 phone contained no known defects at the time of sale.

**G.    Any supposed "arbitration" terms and conditions were hidden from purchasers of the Samsung Galaxy S20 by deliberate design and should not limit the rights of Plaintiffs and Class members.**

105.    Samsung publicly indicates that its S20 box does not contain any terms and conditions inside. According to Samsung, this is what's "In the Box" that is given to purchasers of the Samsung Galaxy S20:

**In the Box**

| Galaxy S20 FE 5G, S20 5G, S20+ 5G, and S20 Ultra 5G | Device Data Cable Travel Adapter Ejection Pin | Earphones sound by AKG Quick Start Guide Clear Cover Protective Film |
|---|---|---|

*Earphones sound by AKG and Clear Cover are not included with Galaxy S20 FE 5G.
*Some of the listed components, including cover and protective film, may not be available depending on the model you purchase or the country or region you live in.
*If using a screen protector, it is recommended to use a Samsung product for better fingerprint recognition.        70

_____
[70]    https://www.samsung.com/us/mobile/galaxy-s20-5g/specs/.

106.    The "Quick Start Guide" that is included in the box is also available to download at Samsung's website, and contains *no* terms and conditions whatsoever:



107.    By Samsung's own admission, *neither* the "In the Box" list nor the "Quick Start Guide" mention *any terms and conditions* of sale. It also appears that Samsung has taken steps to actively hide terms and conditions from consumers. By Samsung's own admission, the company *used* to house terms and conditions in a Guidebook that came with its smartphones, on the second

---

71      https://downloadcenter.samsung.com/content/UM/202003/202003052152
02785/UNL_STR_SM-G981U_SM-G986U_SM-G988U_EN_IBG_Q_10.0_
021120_FINAL.pdf.

page immediately of the Guidebook, and the terms and conditions were also mentioned in the Table of Contents on the first numbered page of the Guidebook.[72] According to Samsung's own admission, the *exterior* of Samsung's product packaging merely stated, "Device purchase subject to additional Samsung terms and conditions,"[73] as depicted below:



[74]

---

[72]    *Kessler v. Samsung*, Memorandum of Law in Support of Defendant Samsung Electronics America, Inc.'s Motion to Deny Class Certification or Strike Class Allegations, Dkt. 31, at 3-4, filed July 3, 2018, No. 2:17-cv-00082-LA,

[73]    *Id.* at 3.

[74]    Case No. 2:17-cv-00082-LA, *Kessler v. Samsung*, Rendering of bottom of Galaxy S7 Edge box label, excerpted from Exhibit A (Galaxy S7 Edge External Label) accompanying the Declaration of Joy McBeth in Support of Samsung Electronics America, Inc.'s Motion to Dismiss Complaint, Dkt. 8, filed March 30, 2017.

Therefore, based on Samsung's own statements and a comparison of Samsung smartphone packaging before and after previous litigation regarding the screen shattering defect in the Samsung S7, it appears that Samsung has made the decision to *remove any mention of terms and conditions* from the inside of its box or any materials housed inside the box, including its Guidebook (now called a "Quick Start Guide."). Based on Samsung's own statements and the comparison of packaging before and after the S7 litigation, it appears that Samsung has kept the tiny font reference to terms and conditions on the *bottom* of the box, depicted in the label above, and *added the words* "including Arbitration Agreement," to the previous reference to terms and conditions on the bottom of the box:



108.    By Samsung's design, Plaintiffs and Class members did not have, and would not have had, the opportunity to have known of any supposed arbitration agreement due to the

inconspicuous nature of Samsung's reference to a supposed arbitration agreement, and Samsung's indication to consumers that there are no terms and conditions within its box. Samsung provided *no* indication and no explicit reference to consumers that there were supposed terms and conditions on the bottom of the S20 box. By Samsung's design, in indicating there were no terms and conditions in its box, Samsung hid any supposed terms and conditions. Plaintiffs and Class members did not view, were not aware of, and did not manifest any consent to, and did not have reasonable notice of, any supposed arbitration terms, and as a result, any supposed arbitration terms are not enforceable, and should not be binding on Plaintiffs and the Class.

109.    Plaintiffs allege that there is no enforceable agreement between the parties, as the supposed arbitration agreement is inconspicuous, ineffective, unenforceable, and unconscionable. Defendant not only failed to disclose, but actively hid, an arbitration agreement from Plaintiffs. Not only did Samsung not notify consumers of, nor call any attention to, the inconspicuous arbitration reference in tiny font on the outside bottom of the S20 product box, but Samsung affirmatively told consumers, via the exclusion of terms and conditions from the "What's the Box" list, that there were no terms and conditions in the box provided to consumers.

110.    Samsung has also taken additional active steps to conceal its arbitration agreement, including removing the mention of arbitration terms and conditions—or any terms and conditions whatsoever—from the product guidebook located within the Samsung Galaxy S20 box.

111.    There can be no binding arbitration contract between Plaintiffs and the Class, and Samsung, as there was no mutual assent provided by Plaintiffs and the Class. Plaintiffs and the Class could not assent, as they were provided no reasonable notice of the existence of contractual arbitration terms, and no opportunity to acquire an understanding of said terms. Public policy dictates that any supposed arbitration agreement be unenforceable in this case. Plaintiffs and

members of the Class have been denied any meaningful choice as they were not on notice of any arbitration agreement and/or terms. A gross disparity in bargaining power exists between Defendant and Class members as only Defendant knew of the defect. This disparity would only be compounded if Plaintiffs and the Class had their rights limited by an agreement that only the Defendant knew of.

## V.    TOLLING OF THE STATUTE OF LIMITATIONS

112.    As of the date of this complaint, Samsung continues to market its smartphones as having a high-quality camera, despite its knowledge that the Shattered Products are defective, have catastrophically failed, or can catastrophically fail.

113.    Plaintiffs and Class members did not discover and could not reasonably have discovered prior to purchase that their Shattered Products are defective, that the performance of their Shattered Products is impaired by this defect, and that such performance is far less than Samsung promised, or that, as a result of the foregoing, they overpaid for their smartphones, the value of their smartphones is diminished, their smartphones are unsafe, and/or their smartphones will require costly modification to avoid a catastrophic, even more costly failure, and that any such modifications would impair other qualities of the Shattered Products that formed a material part of the bargain between the parties in the purchase of the Shattered Products by Plaintiffs and Class members.

## VI.    CHOICE OF LAW

114.    Because this Complaint is brought in the District of New Jersey, New Jersey's choice of law regime governs the allegations for the Nationwide class.

## VII.    CLASS ACTION ALLEGATIONS

115.    Throughout this complaint, "Shattered Products" is defined as Samsung-manufactured Galaxy S20 smartphones, including the Galaxy S20, Galaxy S20+, Galaxy S20 Ultra

- 43 -

5G, Galaxy S20+ 5G, Galaxy S20 5G, Galaxy S20 Ultra/LTE, Galaxy S20 FE, and Galaxy S20 FE 5G.

116.    Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of the following Class and Subclasses:

### The Nationwide Class:

All persons or entities in the United States who purchased or leased one or more of the Shattered Product.

### The New York Subclass:

All persons or entities in New York who purchased or leased one or more of the Shattered Product.

### The Ohio Subclass:

All persons or entities in Ohio who purchased or leased one or more of the Shattered Product.

### The South Carolina Subclass:

All persons or entities in South Carolina who purchased or leased one or more of the Shattered Product.

### The Virginia Subclass:

All persons or entities in Virginia who purchased or leased one or more of the Shattered Product.

### The Washington Subclass:

All persons or entities in Washington State who purchased or leased one or more of the Shattered Product.

117.    Plaintiffs assert claims under the laws of each state set forth below.

118.    Excluded from the Class and Subclasses are individuals who have personal injury claims resulting from the glass shattering defect. Also excluded from the Class and Subclasses is Samsung and its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any entity in which Samsung has a controlling

interest. In addition, governmental entities and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff are excluded from the Class and Subclasses. Plaintiffs reserve the right to revise the Class definitions based upon information learned through discovery.

119.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

120.    The Class Representatives are asserting claims that are typical of the claims of Class and Subclass member, and they will fairly and adequately represent and protect the interests of the Class and Subclasses in that they have no interests antagonistic to those of the putative Class and Class members.

121.    The amount of damages suffered by each individual member of the Class, in light of the expense and burden of individual litigation, would make it difficult or impossible for individual Class and Class members to redress the wrongs done to them. Plaintiffs and Class members have all suffered harm and damages as a result of Samsung's unlawful and wrongful conduct. Absent a class action, Samsung's will likely not have to compensate victims for Samsung's wrongdoings and unlawful acts or omissions, and will continue to commit the same kinds of wrongful and unlawful acts or omissions in the future. Indeed, upon information and belief, Samsung's continues to deny claims relating to the Shattered Products and thus continues ongoing misrepresentations to the Class.

122.    **Numerosity under Federal Rule of Civil Procedure 23(a)(1):** The Class and Subclasses are so numerous that individual joinder of all of its members is impracticable. Due to the nature of the trade and commerce involved, Plaintiffs believe that the total number of Class

and Subclass members is at least in the thousands, and are numerous and geographically dispersed across the country. While the exact number and identities of the Class and Subclass members is unknown at this time, such information can be ascertained through appropriate investigation and discovery, as well as by the notice Class members will receive by virtue of this litigation so that they may self-identify. The disposition of the claims of Class and Subclass members in a single class action will provide substantial benefits to all Parties and the Court. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice. The number of persons for whom this action is filed who are citizens of these United States effectively exhausts the membership of the class.

123. **Commonality and Predominance under Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):** This action involves common questions of law and fact which predominate over any questions affecting individual Class members, including, without limitation:

a.   Whether Samsung engaged in the conduct alleged herein;

b.   Whether Samsung knew about the glass shattering defect and the inherent problems related thereto, and if so, how long Samsung knew or should have known as much;

c.   Whether Samsung designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Shattered Products into the stream of commerce within the United States;

d.   Whether the Shattered Products that are the subject of this complaint are defective such that they are not fit for ordinary consumer use;

e.   Whether Samsung omitted material facts about the quality of the Shattered Products;

f.   Whether Samsung designed, manufactured, marketed, and distributed Shattered Products with defective or otherwise inadequate glass;

g.    Whether Samsung's conduct violates states' consumer protection statutes and constitutes breach of contract or warranty and fraudulent concealment as asserted herein;

h.    Whether Plaintiffs and the Subclass members overpaid for their smartphone at the point of sale or lease; and

i.    Whether Plaintiffs and Subclass members are entitled to damages and other monetary relief and, if so, what amount.

124.    **Typicality under Federal Rule of Civil Procedure 23(a)(3):** Plaintiffs' claims are typical of the Class and Subclass members' claims because all have been comparably injured through Samsung's wrongful conduct as described above.

125.    **Adequacy of Representation under Federal Rule of Civil Procedure 23(a)(3):** Plaintiffs are adequate Class Representatives because their interests do not conflict with the interests of Class and Subclass members they seek to represent. Additionally, Plaintiffs have retained counsel with substantial experience in handling complex class action and multi-district litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of Class and Subclass members and have the financial resources to do so. The interests of Class and Subclass members will be fairly and adequately protected by Plaintiffs and their counsel.

126.    **Superiority of Class Action under Federal Rule of Civil Procedure 23(b)(3):** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The financial detriment suffered by Plaintiffs and the other members of the Class and Subclasses are relatively small compared to the burden and expense that would be required to individually litigate their claims against Samsung. Accordingly, it would be impracticable for the members of the Class and Subclasses to individually seek redress for Samsung's wrongful conduct. Even if members of the Class and Subclasses could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments

and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VIII.   CAUSES OF ACTION

**A.    Claims brought on behalf of the Nationwide Class**

<u>COUNT I</u>
**VIOLATIONS OF 15 U.S.C. § 2301, *ET SEQ*.
THE MAGNUSON-MOSS WARRANTY ACT**

127.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

128.    This claim is brought on behalf of the Nationwide Class.

129.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

130.    Samsung is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)–(5).

131.    The Shattered Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

132.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

133.    Samsung's warranty provided to owners and lessees of the Shattered Products is a written warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Shattered Products' implied warranties are covered under 15 U.S.C. § 2301(7).

134.    Samsung breached these warranties, as described in more detail above. Without limitation, the Shattered Products are equipped with defective glass that can shatter, leading to

injury and property damage. The Shattered Products share a common design defect in that the glass is prone to shattering and fails to operate as represented by Samsung.

135.    Plaintiffs and the other Class members have had sufficient direct dealings with either Samsung or its agents (e.g., dealerships and technical support) to establish privity of contract between Samsung on one hand, and Plaintiffs and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Samsung and its dealers, and specifically, of Samsung's implied warranties. The dealers were not intended to be the ultimate consumers of the Shattered Products and have no rights under the warranty agreements provided with the Shattered Products; the warranty agreements were designed for and intended to benefit the consumers only.

136.    Affording Samsung a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

137.    At the time of sale or lease of each Shattered Product, Samsung knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Shattered Product's inability to perform as warranted, but nonetheless failed to rectify the situation. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Samsung a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

138.    Plaintiffs and the other Class members would suffer economic hardship if they returned their Shattered Products but did not receive the return of all payments made by them. Because Samsung is refusing to acknowledge any revocation of acceptance and return immediately

any payments made, Plaintiffs and the other Class members have not re-accepted their Shattered Products by retaining them.

139.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

140.    Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of the Shattered Products, in an amount to be proven at trial.

## COUNT II
## VIOLATIONS OF NEW JERSEY CONSUMER FRAUD ACT
## (N.J.S.A. § 56:8-1 *ET SEQ.*)

141.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

142.    Plaintiffs bring this Count on behalf of the Nationwide Class against Samsung.

143.    Plaintiffs, other members of the Class, and Samsung are "persons" within the meaning of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.* ("NJ CFA").

144.    Plaintiffs and other members of the Class are "consumers" within the meaning of the NJ CFA.

145.    The smartphones are considered "merchandise," which includes any objects, goods and commodities offered, directly or indirectly, to the public for sale. N.J.S.A. § 56:8-1(c).

146.    "Sale" includes "any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute," N.J.S.A. § 56:8-1(e), and therefore includes Samsung's sale of the Shattered Products.

147.    The NJ CFA declares that "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with

intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . . whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . ." N.J.S.A. §§ 56:8-2. Samsung has engaged in unfair or deceptive acts or practices that violated N.J.S.A. §§ 56:8-2, *et seq.*, as described above and below, by, among other things, representing that the Shattered Products have characteristics, uses, benefits, and qualities which they do not have; representing that the Shattered Products are of a particular standard, quality, and grade when they are not; advertising the Shattered Products with the intent not to sell them as advertised; and representing that the subject of a transaction involving the Shattered Products has been supplied in accordance with a previous representation when it has not.

148.    In the course of Defendant Samsung's business, it willfully failed to disclose and actively concealed that the smartphone was defective, such that normal use of the Shattered Products would cause the glass to shatter. Particularly in light of Defendant's advertising campaign, a reasonable American consumer would expect the Shattered Products to be durable. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Shattered Products.

149.    In purchasing or leasing the Shattered Products, Plaintiffs and the Class members were deceived by Defendant's failure to disclose that normal use of the Shattered Products would cause the camera glass to shatter.

150.    Plaintiffs and the Class members reasonably relied upon Defendant's false misrepresentations. They had no way of knowing that Defendant's representations were false and

gravely misleading. As alleged herein, Defendant engaged in extremely sophisticated methods of deception. Plaintiffs and the Class members did not, and could not, unravel Defendant's deception on their own, as Plaintiffs and Class members were not aware of the defective nature of the Shattered Products prior to purchase.

151.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

152.    Defendant's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

153.    Defendant intentionally and knowingly misrepresented material facts regarding the Shattered Products with intent to mislead Plaintiffs and the Class members.

154.    Defendant knew or should have known that its conduct violated New Jersey law regarding unfair or deceptive acts in trade or commerce.

155.    Defendant owed Plaintiffs and Class members a duty to disclose the truth about the Galaxy S20 defect because Defendant:

  a.    Possessed exclusive knowledge of the design of the Shattered Products and the tendency of the glass to shatter, including warranty claims relating to shattered glass;

  b.    Intentionally concealed the foregoing from Plaintiffs and the Class members; and/or

  c.    Made incomplete representations regarding the quality of the Shattered Products, while purposefully withholding material facts from Plaintiffs and the Class members that contradicted these representations.

156.    Due to its specific and superior knowledge that the glass in the Shattered Products can shatter, its false representations regarding the quality of the cameras in the Shattered Products, and Plaintiffs' and Class members' reliance on these material representations, Samsung had a duty to disclose to Plaintiffs and Class members that the Shattered Products were defective, that

Shattered Products do not have the expected quality over other smartphones, that the glass on the camera panel could shatter and pose a safety hazard, and that Class members would be required to bear the cost of the damage to their smartphones. Having volunteered to provide information to Plaintiffs and Class members, Samsung had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Shattered Products purchased or leased by Plaintiffs and Class members. Quality is a material concern to smartphone consumers. Samsung represented to Plaintiffs and Class members that they were purchasing smartphones that were free from defect, when in fact the smartphones were defective and it was only a matter of time before the glass would shatter.

157.    Defendant's conduct proximately caused injuries to Plaintiffs and the Class members.

158.    Plaintiffs and the Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct, Plaintiffs and the Class members overpaid for their Shattered Products and did not receive the benefit of their bargain, and their Shattered Products have suffered a diminution in value. Plaintiffs and the Class have suffered an ascertainable loss at the point of sale, namely, the difference between the value of what they believed they were purchasing and the value of what they received. While the precise amount of that loss will be the subject of expert analysis, Plaintiffs allege that the difference in value is at least 10% of the purchase price. Plaintiffs anticipate relying on expert analyses, including conjoint analyses of the value consumers place on different product attributes and phones with and without certain attributes, as well as a standard statistical analysis concerning the impact of different attributes on consumers' "willingness to pay." This analysis will quantify at trial the exact amount, and such analysis allows for admissible proof of an ascertainable loss, which is

alleged at this stage to be at least ten percent. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

159.    Defendant's violations present a continuing risk to Plaintiffs as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest as their actions offend public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

160.    As a direct and proximate result of Samsung's violations of the NJ CFA, Plaintiffs and the Class members have suffered injury-in-fact and/or actual damage.

161.    Under the NJ CFA, Plaintiffs and the Class members seek monetary relief against Samsung measured as the diminution of the value of the Shattered Products caused by Samsung's violations of the NJ CFA as alleged herein.

162.    Pursuant to N.J.S.A. § 56:8-20, Plaintiffs will serve the New Jersey Attorney General with a copy of this Complaint within 10 days of filing.

**B.    Claims brought on behalf of the New York Subclass**

<u>**COUNT I**</u>
**VIOLATIONS OF THE NEW YORK GENERAL BUSINESS LAW § 349**
**(N.Y. GEN. BUS. LAW § 349)**

163.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

164.    Plaintiff Teitsch brings this Count on behalf of the New York Subclass against Samsung.

165.    Plaintiff, and other members of the Subclass, are "persons" as defined by the New York General Business Law ("New York GBL"). N.Y. Gen. Bus. Law § 349(h). Samsung is a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

166.    New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Samsung has engaged in unfair or deceptive acts or practices that violated the New York GBL, as described above and below, by, among other things, representing that the Shattered Products have characteristics, uses, benefits, and qualities which they do not have; representing that the Shattered Products are of a particular standard, quality, and grade when they are not; advertising the Shattered Products with the intent not to sell them as advertised; and representing that the subject of a transaction involving the Shattered Products has been supplied in accordance with a previous representation when it has not.

167.    In the course of Defendant Samsung's business, it willfully failed to disclose and actively concealed that the smartphone was defective, such that normal use of the Shattered Products would cause the glass to shatter. Particularly in light of Defendant's advertising campaign, a reasonable American consumer would expect the Shattered Products to be durable. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Shattered Products.

168.    In purchasing or leasing the Shattered Products, Plaintiff and Subclass members were deceived by Defendant's failure to disclose that normal use of the Shattered Products would cause the camera glass to shatter.

169.    Plaintiff and the Subclass members reasonably relied upon Defendant's false misrepresentations. They had no way of knowing that Defendant's representations were false and gravely misleading. As alleged herein, Defendant engaged in extremely sophisticated methods of

deception. Plaintiff and the Subclass members did not, and could not, unravel Defendant's deception on their own, as Plaintiff and Subclass members were not aware of the defective nature of the Shattered Products prior to purchase.

170.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

171.    Defendant's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

172.    Defendant intentionally and knowingly misrepresented material facts regarding the Shattered Products with intent to mislead Plaintiff and the Subclass members.

173.    Defendant knew or should have known that its conduct violated New York law regarding unfair or deceptive acts in trade or commerce.

174.    Defendant owed Plaintiff and Subclass members a duty to disclose the truth about the glass shattering defect because Defendant:

   a.    Possessed exclusive knowledge of the design of the Shattered Products and the tendency of the glass to shatter, including warranty claims relating to shattered glass;

   b.    Intentionally concealed the foregoing from Plaintiff and the Subclass members; and/or

   c.    Made incomplete representations regarding the quality of the Shattered Products, while purposefully withholding material facts from Plaintiffs and the Subclass members that contradicted these representations.

175.    Due to its specific and superior knowledge that the glass in the Shattered Products can shatter, its false representations regarding the quality of the cameras in the Shattered Products, and Plaintiff's and Subclass members' reliance on these material representations, Samsung had a duty to disclose to Plaintiff and Subclass members that the Shattered Products were defective, that Shattered Products do not have the expected quality over other smartphones, that the glass on the

camera panel could shatter and pose a safety hazard, and that Subclass members would be required to bear the cost of the damage to their smartphones. Having volunteered to provide information to Plaintiff and Subclass members, Samsung had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Shattered Products purchased or leased by Plaintiff and Subclass members. Quality is a material concern to smartphone consumers. Samsung represented to Plaintiff and Subclass members that they were purchasing smartphones that were free from defect, when in fact the smartphones were defective and it was only a matter of time before the glass would shatter.

176.    Defendant's conduct proximately caused injuries to Plaintiff and the Subclass members.

177.    Plaintiff and the Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct, Plaintiff and the Subclass members overpaid for their Shattered Products and did not receive the benefit of their bargain, and their Shattered Products have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

178.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest as their actions offend public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

179.    As a direct and proximate result of Samsung's violations of the New York GBL, Plaintiff and the Subclass members have suffered injury-in-fact and/or actual damage.

180.    Pursuant to the New York GBL, Samsung is liable to Plaintiff and the Subclass for damages in amounts to be proven at trial, treble damages for willful and knowing violations,

punitive damages, and attorneys' fees and costs, as well as any other remedies the Court may deem appropriate under the New York GBL.

## COUNT II
## FRAUD BY CONCEALMENT
## (BASED ON NEW YORK LAW)

181.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

182.   Plaintiff Teitsch brings this Count on behalf of the New York Subclass against Samsung.

183.   As set forth above, Plaintiff and the putative Subclass have suffered from a defect that existed in the Shattered Products at the time of purchase.

184.   Samsung intentionally concealed that the Shattered Products are defective.

185.   As alleged above, Samsung further affirmatively misrepresented to Plaintiff, in advertising and other forms of communication, including standard and uniform material provided with each Shattered Product and on its website, that the Shattered Products they were selling had no significant defects, and that the Shattered Products were safe, reliable, durable, and of high quality, and would perform and operate in a safe manner.

186.   Defendant knew about the defect in the Shattered Product when these representations were made.

187.   The Shattered Products purchased by Plaintiffs and the other Subclass members were defective.

188.   Defendant had a duty to disclose that the Shattered Product contained a fundamental defect as alleged herein, because Plaintiff and the other Subclass members relied on Defendant's material representations.

189.   As alleged herein, at all relevant times, Defendant has held out the Shattered Products to be free from defects such as the glass shattering defect. Defendant touted and continues

to tout the many benefits and advantages of the Shattered Products, but nonetheless failed to disclose important facts related to the defect. This made Defendant's other disclosures about the Shattered Products deceptive.

190.    The truth about the defective Shattered Products was known only to Defendant; Plaintiffs and the other Subclass members did not know of these facts and Defendant actively concealed these facts from Plaintiff and Subclass members.

191.    Plaintiff and the other Subclass members reasonably relied upon Defendant's deception. They had no way of knowing that Defendant's representations were false, misleading, or incomplete. As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own. Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the presence of a defect in the Shattered Products.

192.    Defendant's false representations and omissions were material to consumers because they concerned the safety of the Shattered Product, which played a significant role in the value of the Shattered Product.

193.    Defendant had a duty to disclose the glass shattering defect and violations with respect to the Shattered Products, as well as the lack of a remedy, because they concerned the safety of the Shattered Products, the details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.

194.    Defendant also had a duty to disclose because it made general affirmative representations about the quality of the Shattered Products, without telling consumers that the Shattered Products had a fundamental defect that would affect the quality of the Shattered Products.

195.    Defendant's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the glass shattering defect. These omitted and concealed facts were material because they directly impact the quality and value of the Shattered Products purchased by Plaintiff and Subclass members.

196.    Defendant has still not made full and adequate disclosures and continues to defraud Plaintiff and Subclass members by concealing material information regarding the defect in the Shattered Products.

197.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for Shattered Products with the glass shattering defect, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Subclass members' actions were justified. Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

198.    Because of the concealment and/or suppression of facts, Plaintiff and Subclass members sustained damage because they own Shattered Products that are diminished in value as a result of Defendant's concealment of the true safety and quality of Shattered Products. Had Plaintiff and Subclass members been aware of the glass shattering defect, and Defendant's disregard for the truth, Plaintiff and Subclass members would have paid less for their Shattered Products or would not have purchased them at all.

199.    The value of Plaintiff's and Subclass members' Shattered Products has diminished as a result of Defendant's fraudulent concealment of the glass shattering defect, which has made

- 60 -

any reasonable consumer reluctant to purchase a Shattered Product, let alone pay what otherwise would have been fair market value for the Shattered Product.

200.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

201.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## BREACH OF EXPRESS WARRANTY

202.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

203.    Plaintiff Teitsch brings this Count on behalf of the New York Subclass against Samsung.

204.    In selling its smartphones, Samsung expressly warranted in advertisements that its smartphones were free from defect, reliable, and durable.

205.    These affirmations and promises were part of the basis of the bargain between the parties.

206.    Defendant breached these warranties arising from its advertisements, as described in more detail above. Without limitation, the Shattered Products are equipped with a defective rear camera module glass that can shatter spontaneously, leading to injury and property damage. The Shattered Products share a common design defect in that the camera glass fails to operate as represented by Samsung.

207.    As a direct and proximate cause of Samsung's breach of express warranties, Plaintiff and members of the Subclass have been damaged in an amount to be determined at trial.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.Y. U.C.C. § 2-314)

208.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

209.    Plaintiff brings this Count on behalf of the New York Subclass against Samsung.

210.    Samsung is and was at all relevant times a merchant with respect to smartphones such as the Galaxy S20 under N.Y. U.C.C. § 2-314.

211.    A warranty that the Samsung Galaxy S20s were in merchantable condition was implied by law in the instant transaction, pursuant to N.Y. U.C.C. § 2-314.

212.    Samsung marketed the Galaxy S20 has having a high-quality, professional-grade camera that would function as reasonably expected by consumers and in accordance with industry standards. Such representations formed the basis of the bargain in Plaintiff's and Subclass members' decisions to purchase the Galaxy S20.

213.    Plaintiff and other Subclass members purchased the Samsung Galaxy S20 from Samsung, or through Samsung's authorized agents for retail sales. At all relevant times, Samsung was the manufacturer, distributor, warrantor, and/or seller of the Samsung Galaxy S20.

214.    Samsung knew or had reason to know of the specific use for which the Samsung Galaxy S20 was purchased.

215.    Because of the defect in the S20 rear camera module glass, the Samsung Galaxy S20 was not in merchantable condition when sold and is not fit for the ordinary purpose of providing a reliable camera.

216.    Samsung knew about the defect in the Samsung Galaxy S20, allowing Samsung to cure its breach of its warranty if it chose.

217.    Samsung's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Samsung's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect. The time limits contained in Samsung's warranty periods were also unconscionable and inadequate to protect Plaintiff and other Subclass members. Among other things, Plaintiff and other Subclass members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Samsung. A gross disparity in bargaining power existed between Samsung and Plaintiff and the other Subclass members, and Samsung knew of the defect at the time of sale.

218.    Plaintiff and Subclass members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Samsung's conduct described herein. Affording Samsung a reasonable opportunity to cure the breach of written warranties would be unnecessary and futile.

219.    Accordingly, Samsung is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

**C.    Claims brought on behalf of the Ohio Subclass**

### COUNT I
### VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT
### (OHIO REV. CODE § 1345.01, *ET SEQ.*)

220.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

221.    Plaintiff Stonebraker brings this Count on behalf of the Ohio Subclass against Samsung.

222.    Plaintiff and other members of the Subclass are "consumers" as defined by the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01 ("Ohio CSPA"). Samsung is a "supplier" as defined by the Ohio CSPA.

223.    Plaintiff's and other members of the Subclass' purchases or leases of the Shattered Products were "consumer transactions" as defined by the Ohio CSPA.

224.    The Ohio CSPA, Ohio Rev. Code Ann. § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, and without limitation of the broad prohibition, the Act prohibits suppliers from representing (i) that goods have characteristics or uses or benefits which they do not have; (ii) that their goods are of a particular quality or grade they are not; and (iii) the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not. Samsung has engaged in unfair or deceptive acts or practices that violated Ohio Rev. Code Ann. § 1345.02, as described above and below, by, among other things, representing that the Shattered Products have characteristics, uses, benefits, and qualities which they do not have; representing that the Shattered Products are of a particular standard, quality, and grade when they are not; advertising the Shattered Products with the intent not to sell them as advertised; and representing that the subject of a transaction involving the Shattered Products has been supplied in accordance with a previous representation when it has not.

225.    In the course of Defendant Samsung's business, it willfully failed to disclose and actively concealed that the smartphone was defective, such that normal use of the Shattered Products would cause the glass to shatter. Particularly in light of Defendant's advertising campaign, a reasonable American consumer would expect the Shattered Products to be durable. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Shattered Products.

- 64 -

226.    In purchasing or leasing the Shattered Products, Plaintiff and the Subclass members were deceived by Defendant's failure to disclose that normal use of the Shattered Products would cause the camera glass to shatter.

227.    Plaintiff and the Subclass members reasonably relied upon Defendant's false misrepresentations. They had no way of knowing that Defendant's representations were false and gravely misleading. As alleged herein, Defendant engaged in extremely sophisticated methods of deception. Plaintiff and the Subclass members did not, and could not, unravel Defendant's deception on their own, as Plaintiff and Subclass members were not aware of the defective nature of the Shattered Products prior to purchase.

228.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

229.    Defendant's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

230.    Defendant intentionally and knowingly misrepresented material facts regarding the Shattered Products with intent to mislead Plaintiff and the Subclass members.

231.    Defendant knew or should have known that its conduct violated Ohio law regarding unfair or deceptive acts in trade or commerce.

232.    Defendant owed Plaintiff and Subclass members a duty to disclose the truth about the glass shattering defect because Defendant:

a.    Possessed exclusive knowledge of the design of the Shattered Products and the tendency of the glass to shatter, including warranty claims relating to shattered glass;

b.    Intentionally concealed the foregoing from Plaintiffs and the Subclass members; and/or

     c.    Made incomplete representations regarding the quality of the Shattered Products, while purposefully withholding material facts from Plaintiffs and the Subclass members that contradicted these representations.

233.    Due to its specific and superior knowledge that the glass in the Shattered Products can shatter, its false representations regarding the quality of the cameras in the Shattered Products, and Plaintiff's and Subclass members' reliance on these material representations, Samsung had a duty to disclose to Plaintiff and Subclass members that the Shattered Products were defective, that Shattered Products do not have the expected quality over other smartphones, that the glass on the camera panel could shatter and pose a safety hazard, and that Subclass members would be required to bear the cost of the damage to their smartphones. Having volunteered to provide information to Plaintiff and Subclass members, Samsung had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Shattered Products purchased or leased by Plaintiff and Subclass members. Quality is a material concern to smartphone consumers. Samsung represented to Plaintiff and Subclass members that they were purchasing smartphones that were free from defect, when in fact the smartphones were defective and it was only a matter of time before the glass would shatter.

234.    Defendant's conduct proximately caused injuries to Plaintiff and the Subclass members.

235.    Plaintiff and the Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct, Plaintiff and the Subclass members overpaid for their Shattered Products and did not receive the benefit of their bargain, and their Shattered Products have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

236.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest as

their actions offend public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

237.    As a direct and proximate result of Samsung's violations of the Ohio CSPA, Plaintiff and the Subclass members have suffered injury-in-fact and/or actual damage.

238.    Pursuant to the Ohio CSPA, Samsung is liable to Plaintiff and the Subclass for all damages proximately caused by the Defendant's unfair or deceptive or unconscionable conduct, and attorneys' fees and costs, as well as any other remedies the Court may deem appropriate under the Ohio CSPA.

## COUNT II
## FRAUD BY CONCEALMENT
## (BASED ON OHIO LAW)

239.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

240.    Plaintiff Stonebraker brings this Count on behalf of the Ohio Subclass against Samsung.

241.    As set forth above, Plaintiff and the putative Subclass have suffered from a defect that existed in the Shattered Products at the time of purchase.

242.    Samsung intentionally concealed that the Shattered Products are defective.

243.    As alleged above, Samsung further affirmatively misrepresented to Plaintiff, in advertising and other forms of communication, including standard and uniform material provided with each Shattered Product and on its website, that the Shattered Products they were selling had no significant defects, and that the Shattered Products were safe, reliable, durable, and of high quality, and would perform and operate in a safe manner.

244.    Defendant knew about the defect in the Shattered Product when these representations were made.

245.    The Shattered Products purchased by Plaintiff and the other Subclass members were defective.

246.    Defendant had a duty to disclose that the Shattered Product contained a fundamental defect as alleged herein, because Plaintiff and the other Subclass members relied on Defendant's material representations.

247.    As alleged herein, at all relevant times, Defendant has held out the Shattered Products to be free from defects such as the glass shattering defect. Defendant touted and continues to tout the many benefits and advantages of the Shattered Products, but nonetheless failed to disclose important facts related to the defect. This made Defendant's other disclosures about the Shattered Products deceptive.

248.    The truth about the defective Shattered Products was known only to Defendant; Plaintiff and the other Subclass members did not know of these facts and Defendant actively concealed these facts from Plaintiff and Subclass members.

249.    Plaintiff and the other Subclass members reasonably relied upon Defendant's deception. They had no way of knowing that Defendant's representations were false, misleading, or incomplete. As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own. Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the presence of a defect in the Shattered Products.

250.    Defendant's false representations and omissions were material to consumers because they concerned the safety of the Shattered Product, which played a significant role in the value of the Shattered Product.

251.    Defendant had a duty to disclose the glass shattering defect and violations with respect to the Shattered Products, as well as the lack of a remedy, because they concerned the

safety of the Shattered Products, the details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.

252.    Defendant also had a duty to disclose because it made general affirmative representations about the quality of the Shattered Products, without telling consumers that the Shattered Products had a fundamental defect that would affect the quality of the Shattered Products.

253.    Defendant's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the glass shattering defect. These omitted and concealed facts were material because they directly impact the quality and value of the Shattered Products purchased by Plaintiff and Subclass members.

254.    Defendant has still not made full and adequate disclosures and continues to defraud Plaintiff and Subclass members by concealing material information regarding the defect in the Shattered Products.

255.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for Shattered Products with the glass shattering defect, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Subclass members' actions were justified. Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

256.    Because of the concealment and/or suppression of facts, Plaintiff and Subclass members sustained damage because they own Shattered Products that are diminished in value as

a result of Defendant's concealment of the true safety and quality of Shattered Products. Had Plaintiff and Subclass members been aware of the glass shattering defect and Defendant's disregard for the truth, Plaintiff and Subclass members would have paid less for their Shattered Products or would not have purchased them at all.

257.    The value of Plaintiff's and Subclass members' Shattered Products has diminished as a result of Defendant's fraudulent concealment of the glass shattering defect, which has made any reasonable consumer reluctant to purchase a Shattered Product, let alone pay what otherwise would have been fair market value for the Shattered Product.

258.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

259.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## BREACH OF EXPRESS WARRANTY

260.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

261.    Plaintiff brings this Count on behalf of the Ohio Subclass against Samsung.

262.    In selling its smartphones, Samsung expressly warranted in advertisements that its smartphones were free from defect, reliable, and durable.

263.    These affirmations and promises were part of the basis of the bargain between the parties.

264.    Defendant breached these warranties arising from its advertisements, as described in more detail above. Without limitation, the Shattered Products are equipped with a defective rear camera module glass that can shatter spontaneously, leading to injury and property damage. The Shattered Products share a common design defect in that the camera glass fails to operate as represented by Samsung.

265.    As a direct and proximate cause of Samsung's breach of express warranties, Plaintiff and members of the Subclass have been damaged in an amount to be determined at trial.

## COUNT IV
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (OHIO CODE § 1302.27)

266.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

267.    Plaintiff brings this Count on behalf of the Ohio Subclass against Samsung.

268.    Samsung is and was at all relevant times a merchant with respect to smartphones such as the Galaxy S20 under Ohio Code § 1302.27.

269.    A warranty that the Samsung Galaxy S20s were in merchantable condition was implied by law in the instant transaction, pursuant to Ohio Code § 1302.27.

270.    Samsung marketed the Galaxy S20 has having a high-quality, professional-grade camera that would function as reasonably expected by consumers and in accordance with industry standards. Such representations formed the basis of the bargain in Plaintiff's and Subclass members' decisions to purchase the Galaxy S20.

271.    Plaintiff and other Subclass members purchased the Samsung Galaxy S20 from Samsung, or through Samsung's authorized agents for retail sales. At all relevant times, Samsung was the manufacturer, distributor, warrantor, and/or seller of the Samsung Galaxy S20.

272.    Samsung knew or had reason to know of the specific use for which the Samsung Galaxy S20 was purchased.

273.     Because of the defect in the S20 rear camera module glass, the Samsung Galaxy S20 was not in merchantable condition when sold and is not fit for the ordinary purpose of providing a reliable camera.

274.     Samsung knew about the defect in the Samsung Galaxy S20, allowing Samsung to cure its breach of its warranty if it chose.

275.     Samsung's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Samsung's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect. The time limits contained in Samsung's warranty periods were also unconscionable and inadequate to protect Plaintiff and other Subclass members. Among other things, Plaintiff and other Subclass members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Samsung. A gross disparity in bargaining power existed between Samsung and Plaintiff and the other Subclass members, and Samsung knew of the defect at the time of sale.

276.     Plaintiff and Subclass members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Samsung's conduct described herein. Affording Samsung a reasonable opportunity to cure the breach of written warranties would be unnecessary and futile.

277.     Accordingly, Samsung is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

D.      **Claims brought on behalf of the South Carolina Subclass**

**COUNT I**
**VIOLATIONS OF THE SOUTH CAROLINA**
**UNFAIR TRADE PRACTICES ACT**
**(S.C. CODE ANN. §§ 39-5-10, *ET SEQ.*)**

278.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

279.    Plaintiff Vasadi brings this Count on behalf of the South Carolina Subclass against Samsung.

280.    Plaintiff, other members of the Subclass, and Samsung are "persons" within the meaning of the S.C. Code Ann. § 39-5-10(a).

281.    Samsung engaged in "trade" or "commerce" under S.C. Code Ann. § 39-5-10(b).

282.    The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20(a). Samsung has engaged in unfair or deceptive acts or practices that violated S.C. Code Ann. § 39-5-20(a), as described above and below, by, among other things, representing that the Shattered Products have characteristics, uses, benefits, and qualities which they do not have; representing that the Shattered Products are of a particular standard, quality, and grade when they are not; advertising the Shattered Products with the intent not to sell them as advertised; and representing that the subject of a transaction involving the Shattered Products has been supplied in accordance with a previous representation when it has not.

283.    In the course of Defendant Samsung's business, it willfully failed to disclose and actively concealed that the smartphone was defective, such that normal use of the Shattered Products would cause the glass to shatter. Particularly in light of Defendant's advertising campaign, a reasonable American consumer would expect the Shattered Products to be durable.

Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Shattered Products.

284.    In purchasing or leasing the Shattered Products, Plaintiff and the Subclass members were deceived by Defendant's failure to disclose that normal use of the Shattered Products would cause the camera glass to shatter.

285.    Plaintiff and the Subclass members reasonably relied upon Defendant's false misrepresentations. They had no way of knowing that Defendant's representations were false and gravely misleading. As alleged herein, Defendant engaged in extremely sophisticated methods of deception. Plaintiff and the Subclass members did not, and could not, unravel Defendant's deception on their own, as Plaintiff and Subclass members were not aware of the defective nature of the Shattered Products prior to purchase.

286.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

287.    Defendant's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

288.    Defendant intentionally and knowingly misrepresented material facts regarding the Shattered Products with intent to mislead Plaintiff and the Subclass members.

289.    Defendant knew or should have known that its conduct violated South Carolina law regarding unfair or deceptive acts in trade or commerce.

290.    Defendant owed Plaintiff and Subclass members a duty to disclose the truth about the glass shattering defect because Defendant:

a.    Possessed exclusive knowledge of the design of the Shattered Products and the tendency of the glass to shatter, including warranty claims relating to shattered glass;

b.    Intentionally concealed the foregoing from Plaintiff and the Subclass members; and/or

c.    Made incomplete representations regarding the quality of the Shattered Products, while purposefully withholding material facts from Plaintiffs and the Subclass members that contradicted these representations.

291.    Due to its specific and superior knowledge that the glass in the Shattered Products can shatter, its false representations regarding the quality of the cameras in the Shattered Products, and Plaintiff's and Subclass members' reliance on these material representations, Samsung had a duty to disclose to Plaintiff and Subclass members that the Shattered Products were defective, that Shattered Products do not have the expected quality over other smartphones, that the glass on the camera panel could shatter and pose a safety hazard, and that Subclass members would be required to bear the cost of the damage to their smartphones. Having volunteered to provide information to Plaintiff and Subclass members, Samsung had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Shattered Products purchased or leased by Plaintiff and Subclass members. Quality is a material concern to smartphone consumers. Samsung represented to Plaintiff and Subclass members that they were purchasing smartphones that were free from defect, when in fact the smartphones were defective and it was only a matter of time before the glass would shatter.

292.    Defendant's conduct proximately caused injuries to Plaintiff and the Subclass members.

293.    Plaintiff and the Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct, Plaintiff and the Subclass members overpaid for their Shattered Products and did not receive the benefit of their

bargain, and their Shattered Products have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

294.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest as their actions offend public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

295.    As a direct and proximate result of Samsung's violations of the South Carolina UTPA, Plaintiff and the Subclass members have suffered injury-in-fact and/or actual damage.

296.    Pursuant to S.C. Code Ann. § 39-5-140(a), Samsung is liable to Plaintiff and the Subclass for damages in amounts to be proven at trial, treble damages for willful and knowing violations, punitive damages, and attorneys' fees and costs, as well as any other remedies the Court may deem appropriate under the South Carolina UTPA.

## COUNT II
## FRAUD BY CONCEALMENT
## (BASED ON SOUTH CAROLINA LAW)

297.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

298.    Plaintiff brings this Count on behalf of the South Carolina Subclass against Samsung.

299.    As set forth above, Plaintiff and the putative Subclass have suffered from a defect that existed in the Shattered Products at the time of purchase.

300.    Samsung intentionally concealed that the Shattered Products are defective.

301.    As alleged above, Samsung further affirmatively misrepresented to Plaintiff, in advertising and other forms of communication, including standard and uniform material provided with each Shattered Product and on its website, that the Shattered Products they were selling had

no significant defects, and that the Shattered Products were safe, reliable, durable, and of high quality, and would perform and operate in a safe manner.

302.    Defendant knew about the defect in the Shattered Product when these representations were made.

303.    The Shattered Products purchased by Plaintiff and the other Subclass members were defective.

304.    Defendant had a duty to disclose that the Shattered Product contained a fundamental defect as alleged herein, because Plaintiff and the other Subclass members relied on Defendant's material representations.

305.    As alleged herein, at all relevant times, Defendant has held out the Shattered Products to be free from defects such as the glass shattering defect. Defendant touted and continues to tout the many benefits and advantages of the Shattered Products, but nonetheless failed to disclose important facts related to the defect. This made Defendant's other disclosures about the Shattered Products deceptive.

306.    The truth about the defective Shattered Products was known only to Defendant; Plaintiff and the other Subclass members did not know of these facts and Defendant actively concealed these facts from Plaintiff and Subclass members.

307.    Plaintiff and the other Subclass members reasonably relied upon Defendant's deception. They had no way of knowing that Defendant's representations were false, misleading, or incomplete. As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own. Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the presence of a defect in the Shattered Products.

308.    Defendant's false representations and omissions were material to consumers because they concerned the safety of the Shattered Product, which played a significant role in the value of the Shattered Product.

309.    Defendant had a duty to disclose the glass shattering defect and violations with respect to the Shattered Products, as well as the lack of a remedy, because they concerned the safety of the Shattered Products, the details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.

310.    Defendant also had a duty to disclose because it made general affirmative representations about the quality of the Shattered Products, without telling consumers that the Shattered Products had a fundamental defect that would affect the quality of the Shattered Products.

311.    Defendant's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the glass shattering defect. These omitted and concealed facts were material because they directly impact the quality and value of the Shattered Products purchased by Plaintiff and Subclass members.

312.    Defendant has still not made full and adequate disclosures and continues to defraud Plaintiff and Subclass members by concealing material information regarding the defect in the Shattered Products.

313.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for Shattered Products with the glass shattering defect, and/or would have taken other affirmative steps in light

- 78 -

of the information concealed from them. Plaintiff's and Subclass members' actions were justified. Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

314. Because of the concealment and/or suppression of facts, Plaintiff and Subclass members sustained damage because they own Shattered Products that are diminished in value as a result of Defendant's concealment of the true safety and quality of Shattered Products. Had Plaintiff and Subclass members been aware of the glass shattering defect and Defendant's disregard for the truth, Plaintiff and Subclass members would have paid less for their Shattered Products or would not have purchased them at all.

315. The value of Plaintiff's and Subclass members' Shattered Products has diminished as a result of Defendant's fraudulent concealment of the glass shattering defect, which has made any reasonable consumer reluctant to purchase a Shattered Product, let alone pay what otherwise would have been fair market value for the Shattered Product.

316. Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

317. Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## BREACH OF EXPRESS WARRANTY

318. Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

319.    Plaintiff Vasadi brings this Count on behalf of the South Carolina Subclass against Samsung.

320.    In selling its smartphones, Samsung expressly warranted in advertisements that its smartphones were free from defect, reliable, and durable.

321.    These affirmations and promises were part of the basis of the bargain between the parties.

322.    Defendant breached these warranties arising from its advertisements, as described in more detail above. Without limitation, the Shattered Products are equipped with a defective rear camera module glass that can shatter spontaneously, leading to injury and property damage. The Shattered Products share a common design defect in that the camera glass fails to operate as represented by Samsung.

323.    As a direct and proximate cause of Samsung's breach of express warranties, Plaintiff and members of the Subclass have been damaged in an amount to be determined at trial.

<u>**COUNT IV**</u>
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(S.C. CODE § 36-2-314)**

324.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

325.    Plaintiff Vasadi brings this Count on behalf of the South Carolina Subclass against Samsung.

326.    Samsung is and was at all relevant times a merchant with respect to smartphones such as the Galaxy S20 under S.C. Code § 36-2-314.

327.    A warranty that the Samsung Galaxy S20s were in merchantable condition was implied by law in the instant transaction, pursuant to S.C. Code § 36-2-314.

328.    Samsung marketed the Galaxy S20 has having a high-quality, professional-grade camera that would function as reasonably expected by consumers and in accordance with industry

standards. Such representations formed the basis of the bargain in Plaintiff's and Subclass members' decisions to purchase the Galaxy S20.

329.    Plaintiff and other Subclass members purchased the Samsung Galaxy S20 from Samsung, or through Samsung's authorized agents for retail sales. At all relevant times, Samsung was the manufacturer, distributor, warrantor, and/or seller of the Samsung Galaxy S20.

330.    Samsung knew or had reason to know of the specific use for which the Samsung Galaxy S20 was purchased.

331.    Because of the defect in the S20 rear camera module glass, the Samsung Galaxy S20 was not in merchantable condition when sold and is not fit for the ordinary purpose of providing a reliable camera.

332.    Samsung knew about the defect in the Samsung Galaxy S20, allowing Samsung to cure its breach of its warranty if it chose.

333.    Samsung's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Samsung's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect. The time limits contained in Samsung's warranty periods were also unconscionable and inadequate to protect Plaintiff and other Subclass members. Among other things, Plaintiff and other Subclass members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Samsung. A gross disparity in bargaining power existed between Samsung and Plaintiff and the other Subclass members, and Samsung knew of the defect at the time of sale.

334.    Plaintiff and Subclass members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of

Samsung's conduct described herein. Affording Samsung a reasonable opportunity to cure the breach of written warranties would be unnecessary and futile.

336.    Accordingly, Samsung is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

**E.    Claims brought on behalf of the Virginia Subclass**

<u>**COUNT I**</u>
**VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT**
**(VA. CODE ANN. §§ 59.1-196, *ET SEQ.*)**

336.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

337.    Plaintiff Treacy brings this Count on behalf of the Virginia Subclass against Samsung.

338.    Plaintiff, other members of the Subclass, and Samsung are "persons" within the meaning of the Va. Code Ann. §§ 59.1-198.

339.    Samsung engaged in "consumer transactions" with Plaintiff and the other Subclass members under Va. Code Ann. §§ 59.1-198.

340.    The Virginia Consumer Protection Act ("Virginia CPA") prohibits "(5) misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; (6) misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; . . . (8) advertising goods or services with intent not to sell them as advertised . . . ; [and] (14) using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction . . . ." Va. Code Ann. § 59.1-200(A). Samsung has engaged in unfair or deceptive acts or practices that violated Va. Code Ann. § 59.1-200(A), as described above and below, by, among other things, representing that the Shattered Products have characteristics, uses, benefits, and qualities which they do not have; representing that the Shattered Products are of a particular standard, quality, and grade when they are not; advertising the

Shattered Products with the intent not to sell them as advertised; and representing that the subject of a transaction involving the Shattered Products has been supplied in accordance with a previous representation when it has not.

341.    In the course of Defendant Samsung's business, it willfully failed to disclose and actively concealed that the smartphone was defective, such that normal use of the Shattered Products would cause the glass to shatter. Particularly in light of Defendant's advertising campaign, a reasonable American consumer would expect the Shattered Products to be durable. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Shattered Products.

342.    In purchasing or leasing the Shattered Products, Plaintiff and the Subclass members were deceived by Defendant's failure to disclose that normal use of the Shattered Products would cause the camera glass to shatter.

343.    Plaintiff and the Subclass members reasonably relied upon Defendant's false misrepresentations. They had no way of knowing that Defendant's representations were false and gravely misleading. As alleged herein, Defendant engaged in extremely sophisticated methods of deception. Plaintiff and the Subclass members did not, and could not, unravel Defendant's deception on their own, as Plaintiff and Subclass members were not aware of the defective nature of the Shattered Products prior to purchase.

344.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

345.    Defendant's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

346.    Defendant intentionally and knowingly misrepresented material facts regarding the Shattered Products with intent to mislead Plaintiff and the Subclass members.

347.    Defendant knew or should have known that its conduct violated Virginia law regarding unfair or deceptive acts in trade or commerce.

348.    Defendant owed Plaintiff and Subclass members a duty to disclose the truth about the glass shattering defect because Defendant:

a.    Possessed exclusive knowledge of the design of the Shattered Products and the tendency of the glass to shatter, including warranty claims relating to shattered glass;

b.    Intentionally concealed the foregoing from Plaintiff and the Subclass members; and/or

c.    Made incomplete representations regarding the quality of the Shattered Products, while purposefully withholding material facts from Plaintiff and the Subclass members that contradicted these representations.

349.    Due to its specific and superior knowledge that the glass in the Shattered Products can shatter, its false representations regarding the quality of the cameras in the Shattered Products, and Plaintiff's and Subclass members' reliance on these material representations, Samsung had a duty to disclose to Plaintiff and Subclass members that the Shattered Products were defective, that Shattered Products do not have the expected quality over other smartphones, that the glass on the camera panel could shatter and pose a safety hazard, and that Subclass members would be required to bear the cost of the damage to their smartphones. Having volunteered to provide information to Plaintiff and Subclass members, Samsung had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Shattered Products purchased or leased by Plaintiff and Subclass members. Quality is

a material concern to smartphone consumers. Samsung represented to Plaintiff and Subclass members that they were purchasing smartphones that were free from defect, when in fact the smartphones were defective and it was only a matter of time before the glass would shatter.

350. Defendant's conduct proximately caused injuries to Plaintiff and the Subclass members.

351. Plaintiff and the Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct, Plaintiff and the Subclass members overpaid for their Shattered Products and did not receive the benefit of their bargain, and their Shattered Products have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

352. Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest as their actions offend public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

353. As a direct and proximate result of Samsung's violations of the Virginia CPA, Plaintiff and the Subclass members have suffered injury-in-fact and/or actual damage.

354. Pursuant to Va. Code Ann. § 59.1-204, Samsung is liable to Plaintiff and the Subclass for damages in amounts to be proven at trial, treble damages for willful and knowing violations, punitive damages, and attorneys' fees and costs, as well as any other remedies the Court may deem appropriate under the Virginia CPA.

**COUNT II**
**FRAUD BY CONCEALMENT**
**(BASED ON VIRGINIA LAW)**

355. Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

356.    Plaintiff Treacy brings this Count on behalf of the Virginia Subclass against Samsung.

357.    As set forth above, Plaintiff and the putative Subclass have suffered from a defect that existed in the Shattered Products at the time of purchase.

358.    Samsung intentionally concealed that the Shattered Products are defective.

359.    As alleged above, Samsung further affirmatively misrepresented to Plaintiff, in advertising and other forms of communication, including standard and uniform material provided with each Shattered Product and on its website, that the Shattered Products they were selling had no significant defects, and that the Shattered Products were safe, reliable, durable, and of high quality, and would perform and operate in a safe manner.

360.    Defendant knew about the defect in the Shattered Product when these representations were made.

361.    The Shattered Products purchased by Plaintiff and the other Subclass members were defective.

362.    Defendant had a duty to disclose that the Shattered Product contained a fundamental defect as alleged herein, because Plaintiff and the other Subclass members relied on Defendant's material representations.

363.    As alleged herein, at all relevant times, Defendant has held out the Shattered Products to be free from defects such as the glass shattering defect. Defendant touted and continues to tout the many benefits and advantages of the Shattered Products, but nonetheless failed to disclose important facts related to the defect. This made Defendant's other disclosures about the Shattered Products deceptive.

364.   The truth about the defective Shattered Products was known only to Defendant; Plaintiff and the other Subclass members did not know of these facts and Defendant actively concealed these facts from Plaintiff and Subclass members.

365.   Plaintiff and the other Subclass members reasonably relied upon Defendant's deception. They had no way of knowing that Defendant's representations were false, misleading, or incomplete. As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own. Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the presence of a defect in the Shattered Products.

366.   Defendant's false representations and omissions were material to consumers because they concerned the safety of the Shattered Product, which played a significant role in the value of the Shattered Product.

367.   Defendant had a duty to disclose the glass shattering defect and violations with respect to the Shattered Products, as well as the lack of a remedy, because they concerned the safety of the Shattered Products, the details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiffs or Subclass members.

368.   Defendant also had a duty to disclose because it made general affirmative representations about the quality of the Shattered Products, without telling consumers that the Shattered Products had a fundamental defect that would affect the quality of the Shattered Products.

369.   Defendant's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the glass shattering defect. These

omitted and concealed facts were material because they directly impact the quality and value of the Shattered Products purchased by Plaintiff and Subclass members.

370.    Defendant has still not made full and adequate disclosures and continues to defraud Plaintiff and Subclass members by concealing material information regarding the defect in the Shattered Products.

371.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for Shattered Products with the glass shattering defect, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Subclass members' actions were justified. Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

372.    Because of the concealment and/or suppression of facts, Plaintiff and Subclass members sustained damage because they own Shattered Products that are diminished in value as a result of Defendant's concealment of the true safety and quality of Shattered Products. Had Plaintiff and Subclass members been aware of the glass shattering defect and Defendant's disregard for the truth, Plaintiff and Subclass members would have paid less for their Shattered Products or would not have purchased them at all.

373.    The value of Plaintiff's and Subclass members' Shattered Products has diminished as a result of Defendant's fraudulent concealment of the glass shattering defect, which has made any reasonable consumer reluctant to purchase a Shattered Product, let alone pay what otherwise would have been fair market value for the Shattered Product.

374.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

375.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<u>**COUNT III**</u>
**BREACH OF EXPRESS WARRANTY**

376.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

377.    Plaintiff Treacy brings this Count on behalf of the Virginia Subclass against Samsung.

378.    In selling its smartphones, Samsung expressly warranted in advertisements that its smartphones were free from defect, reliable, and durable.

379.    These affirmations and promises were part of the basis of the bargain between the parties.

380.    Defendant breached these warranties arising from its advertisements, as described in more detail above. Without limitation, the Shattered Products are equipped with a defective rear camera module glass that can shatter spontaneously, leading to injury and property damage. The Shattered Products share a common design defect in that the camera glass fails to operate as represented by Samsung.

381.    As a direct and proximate cause of Samsung's breach of express warranties, Plaintiff and members of the Subclass have been damaged in an amount to be determined at trial.

<u>COUNT IV</u>
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(VA. CODE § 8.2A-212)**

382.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

383.    Plaintiff Treacy brings this Count on behalf of the Virginia Subclass against Samsung.

384.    Samsung is and was at all relevant times a merchant with respect to smartphones such as the Galaxy S20 under Va. Code § 8.2A-212.

385.    A warranty that the Samsung Galaxy S20s were in merchantable condition was implied by law in the instant transaction, pursuant to Va. Code § 8.2A-212.

386.    Samsung marketed the Galaxy S20 has having a high-quality, professional-grade camera that would function as reasonably expected by consumers and in accordance with industry standards. Such representations formed the basis of the bargain in Plaintiff's and Subclass members' decisions to purchase the Galaxy S20.

387.    Plaintiff and other Subclass members purchased the Samsung Galaxy S20 from Samsung, or through Samsung's authorized agents for retail sales. At all relevant times, Samsung was the manufacturer, distributor, warrantor, and/or seller of the Samsung Galaxy S20.

388.    Samsung knew or had reason to know of the specific use for which the Samsung Galaxy S20 was purchased.

389.    Because of the defect in the S20 rear camera module glass, the Samsung Galaxy S20 was not in merchantable condition when sold and is not fit for the ordinary purpose of providing a reliable camera.

390.    Samsung knew about the defect in the Samsung Galaxy S20, allowing Samsung to cure its breach of its warranty if it chose.

- 90 -

391.    Samsung's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Samsung's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect. The time limits contained in Samsung's warranty periods were also unconscionable and inadequate to protect Plaintiff and other Subclass members. Among other things, Plaintiff and other Subclass members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Samsung. A gross disparity in bargaining power existed between Samsung and Plaintiff and the other Subclass members, and Samsung knew of the defect at the time of sale.

392.    Plaintiff and Subclass members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Samsung's conduct described herein. Affording Samsung a reasonable opportunity to cure the breach of written warranties would be unnecessary and futile.

393.    Accordingly, Samsung is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

**F.    Claims brought on behalf of the Washington Subclass**

<u>COUNT I</u>
**VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT**
**(WASH. REV. CODE ANN. §§ 19.86.010, *ET SEQ.*)**

394.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

395.    Plaintiffs Moyer and Shepherd bring this Count on behalf of the Washington Subclass against Samsung.

396.    Plaintiffs, other members of the Subclass, and Samsung are "persons" within the meaning of the Wash. Rev. Code Ann. § 19.86.010(1).

397.    Samsung engaged in "trade" or "commerce" under Wash. Rev. Code Ann. § 19.86.010(2).

398.    The Washington Consumer Protection Act ("Washington CPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. § 19.96.010. Samsung has engaged in unfair or deceptive acts or practices that violated Wash. Rev. Code Ann. § 19.96.010, as described above and below, by, among other things, representing that the Shattered Products have characteristics, uses, benefits, and qualities which they do not have; representing that the Shattered Products are of a particular standard, quality, and grade when they are not; advertising the Shattered Products with the intent not to sell them as advertised; and representing that the subject of a transaction involving the Shattered Products has been supplied in accordance with a previous representation when it has not.

399.    In the course of Defendant Samsung's business, it willfully failed to disclose and actively concealed that the smartphone was defective, such that normal use of the Shattered Products would cause the glass to shatter. Particularly in light of Defendant's advertising campaign, a reasonable American consumer would expect the Shattered Products to be durable. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Shattered Products.

400.    In purchasing or leasing the Shattered Products, Plaintiffs and the Subclass members were deceived by Defendant's failure to disclose that normal use of the Shattered Products would cause the camera glass to shatter.

401.    Plaintiffs and the Subclass members reasonably relied upon Defendant's false misrepresentations. They had no way of knowing that Defendant's representations were false and gravely misleading. As alleged herein, Defendant engaged in extremely sophisticated methods of deception. Plaintiffs and the Subclass members did not, and could not, unravel Defendant's deception on their own, as Plaintiffs and Subclass members were not aware of the defective nature of the Shattered Products prior to purchase.

402.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

403.    Defendant's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

404.    Defendant intentionally and knowingly misrepresented material facts regarding the Shattered Products with intent to mislead Plaintiffs and the Subclass members.

405.    Defendant knew or should have known that its conduct violated Washington law regarding unfair or deceptive acts in trade or commerce.

406.    Defendant owed Plaintiffs and Subclass members a duty to disclose the truth about the glass shattering defect because Defendant:

a.    Possessed exclusive knowledge of the design of the Shattered Products and the tendency of the glass to shatter, including warranty claims relating to shattered glass;

b.    Intentionally concealed the foregoing from Plaintiffs and the Subclass members; and/or

c.    Made incomplete representations regarding the quality of the Shattered Products, while purposefully withholding material facts from Plaintiffs and the Subclass members that contradicted these representations.

407.    Due to its specific and superior knowledge that the glass in the Shattered Products can shatter, its false representations regarding the quality of the cameras in the Shattered Products,

and Plaintiffs' and Subclass members' reliance on these material representations, Samsung had a duty to disclose to Plaintiff and Subclass members that the Shattered Products were defective, that Shattered Products do not have the expected quality over other smartphones, that the glass on the camera panel could shatter and pose a safety hazard, and that Subclass members would be required to bear the cost of the damage to their smartphones. Having volunteered to provide information to Plaintiff and Subclass members, Samsung had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Shattered Products purchased or leased by Plaintiffs and Subclass members. Quality is a material concern to smartphone consumers. Samsung represented to Plaintiffs and Subclass members that they were purchasing smartphones that were free from defect, when in fact the smartphones were defective and it was only a matter of time before the glass would shatter.

408.    Defendant's conduct proximately caused injuries to Plaintiffs and the Subclass members.

409.    Plaintiffs and the Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct, Plaintiffs and the Subclass members overpaid for their Shattered Products and did not receive the benefit of their bargain, and their Shattered Products have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

410.    Defendant's violations present a continuing risk to Plaintiffs as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest as their actions offend public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

411.    As a direct and proximate result of Samsung's violations of the Washington CPA, Plaintiffs and the Subclass members have suffered injury-in-fact and/or actual damage.

412.    Samsung is liable to Plaintiffs and the Subclass for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under Wash. Rev. Code Ann. § 19.86.090.

**COUNT II**
**FRAUD BY CONCEALMENT**
**(BASED ON WASHINGTON LAW)**

413.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

414.    Plaintiffs Moyer and Shepherd bring this Count on behalf of the Washington Subclass against Samsung.

415.    As set forth above, Plaintiffs and the putative Subclass have suffered from a defect that existed in the Shattered Products at the time of purchase.

416.    Samsung intentionally concealed that the Shattered Products are defective.

417.    As alleged above, Samsung further affirmatively misrepresented to Plaintiffs, in advertising and other forms of communication, including standard and uniform material provided with each Shattered Product and on its website, that the Shattered Products they were selling had no significant defects, and that the Shattered Products were safe, reliable, durable, and of high quality, and would perform and operate in a safe manner.

418.    Defendant knew about the defect in the Shattered Product when these representations were made.

419.    The Shattered Products purchased by Plaintiffs and the other Subclass members were defective.

420.    Defendant had a duty to disclose that the Shattered Product contained a fundamental defect as alleged herein, because Plaintiffs and the other Subclass members relied on Defendant's material representations.

421.    As alleged herein, at all relevant times, Defendant has held out the Shattered Products to be free from defects such as the glass shattering defect. Defendant touted and continues to tout the many benefits and advantages of the Shattered Products, but nonetheless failed to disclose important facts related to the defect. This made Defendant's other disclosures about the Shattered Products deceptive.

422.    The truth about the defective Shattered Products was known only to Defendant; Plaintiffs and the other Subclass members did not know of these facts and Defendant actively concealed these facts from Plaintiffs and Subclass members.

423.    Plaintiffs and the other Subclass members reasonably relied upon Defendant's deception. They had no way of knowing that Defendant's representations were false, misleading, or incomplete. As consumers, Plaintiffs and Subclass members did not, and could not, unravel Defendant's deception on their own. Rather, Defendant intended to deceive Plaintiffs and Subclass members by concealing the true facts about the presence of a defect in the Shattered Products.

424.    Defendant's false representations and omissions were material to consumers because they concerned the safety of the Shattered Product, which played a significant role in the value of the Shattered Product.

425.    Defendant had a duty to disclose the glass shattering defect and violations with respect to the Shattered Products, as well as the lack of a remedy, because they concerned the safety of the Shattered Products, the details of the true facts were known and/or accessible only to

Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiffs or Subclass members.

426.    Defendant also had a duty to disclose because it made general affirmative representations about the quality of the Shattered Products, without telling consumers that the Shattered Products had a fundamental defect that would affect the quality of the Shattered Products.

427.    Defendant's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the glass shattering defect as set forth herein. These omitted and concealed facts were material because they directly impact the quality and value of the Shattered Products purchased by Plaintiffs and Subclass members.

428.    Defendant has still not made full and adequate disclosures and continues to defraud Plaintiffs and Subclass members by concealing material information regarding the defect in the Shattered Products.

429.    Plaintiffs and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for Shattered Products with the glass shattering defect, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Subclass members' actions were justified. Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Subclass members.

430.    Because of the concealment and/or suppression of facts, Plaintiffs and Subclass members sustained damage because they own Shattered Products that are diminished in value as a result of Defendant's concealment of the true safety and quality of Shattered Products. Had

Plaintiffs and Subclass members been aware of the glass shattering defect, and Defendant's disregard for the truth, Plaintiffs and Subclass members would have paid less for their Shattered Products or would not have purchased them at all.

431.    The value of Plaintiffs' and Subclass members' Shattered Products have diminished as a result of Defendant's fraudulent concealment of the glass shattering defect, which has made any reasonable consumer reluctant to purchase a Shattered Product, let alone pay what otherwise would have been fair market value for the Shattered Product.

432.    Accordingly, Defendant is liable to Plaintiffs and Subclass members for damages in an amount to be proven at trial.

433.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## BREACH OF EXPRESS WARRANTY

434.    Plaintiff Moyer incorporates by reference all paragraphs as though fully set forth herein.

435.    Plaintiff Moyer brings this Count on behalf of the Washington Subclass against Samsung.

436.    In selling its smartphones, Samsung expressly warranted in advertisements that its smartphones were free from defect, reliable, and durable.

437.    These affirmations and promises were part of the basis of the bargain between the parties.

438.     Defendant breached these warranties arising from its advertisements, as described in more detail above. Without limitation, the Shattered Products are equipped with a defective rear camera module glass that can shatter spontaneously, leading to injury and property damage. The Shattered Products share a common design defect in that the camera glass fails to operate as represented by Samsung.

439.     As a direct and proximate cause of Samsung's breach of express warranties, Plaintiff Moyer and members of the Subclass have been damaged in an amount to be determined at trial.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (WASH. REV. CODE ANN. § 62A.2-314)

440.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

441.     Plaintiffs Moyer and Shepherd bring this Count on behalf of the Washington Subclass against Samsung.

442.     Samsung is and was at all relevant times a merchant with respect to smartphones such as the Galaxy S20 under Wash. Rev. Code Ann. § 62A.2-314.

443.     A warranty that the Samsung Galaxy S20s were in merchantable condition was implied by law in the instant transaction, pursuant to Wash. Rev. Code Ann. § 62A.2-314.

444.     Samsung marketed the Galaxy S20 has having a high-quality, professional-grade camera that would function as reasonably expected by consumers and in accordance with industry standards. Such representations formed the basis of the bargain in Plaintiffs' and Subclass members' decisions to purchase the Galaxy S20.

445.     Plaintiffs and other Subclass members purchased the Samsung Galaxy S20 from Samsung, or through Samsung's authorized agents for retail sales. At all relevant times, Samsung was the manufacturer, distributor, warrantor, and/or seller of the Samsung Galaxy S20.

446.    Samsung knew or had reason to know of the specific use for which the Samsung Galaxy S20 was purchased.

447.    Because of the defect in the S20 rear camera module glass, the Samsung Galaxy S20 was not in merchantable condition when sold and is not fit for the ordinary purpose of providing a reliable camera.

448.    Samsung knew about the defect in the Samsung Galaxy S20, allowing Samsung to cure its breach of its warranty if it chose.

449.    Samsung's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Samsung's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect. The time limits contained in Samsung's warranty periods were also unconscionable and inadequate to protect Plaintiffs and other Subclass members. Among other things, Plaintiffs and other Subclass members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Samsung. A gross disparity in bargaining power existed between Samsung and Plaintiff and the other Subclass members, and Samsung knew of the defect at the time of sale.

450.    Plaintiffs and Subclass members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Samsung's conduct described herein. Affording Samsung a reasonable opportunity to cure the breach of written warranties would be unnecessary and futile.

451.    Accordingly, Samsung is liable to Plaintiffs and Subclass members for damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Nationwide Class and Subclasses, respectfully request that the Court enter judgment in their favor and against Samsung as follows:

A.    Certification of the proposed Nationwide Class and State Subclasses, including appointment of Plaintiffs' counsel as Class Counsel;

B.    An order temporarily and permanently enjoining Samsung from continuing unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    Injunctive relief in the form of a product recall, free replacement, or buy-back program;

D.    An order establishing Samsung as a constructive trustee over profits wrongfully obtained, plus interest;

E.    Costs, restitution, damages, including punitive damages, exemplary damages and treble damages, and disgorgement in an amount to be determined at trial;

F.    An order requiring Samsung to pay both pre- and post-judgment interest on any amounts awarded;

G.    Rescission of all Shattered Product purchases, including reimbursement and/or compensation of the full purchase price of all Shattered Products, including tax and other fees;

H.    A determination that Defendant is financially responsible for all Class notice and administration of class relief;

I.    Any and all applicable statutory and civil penalties;

J.    An award of costs and attorney's fees;

K.    Leave to amend this Complaint to conform to the evidence produced in discovery and at trial; and

- 101 -

L.  Such other or further relief as the Court may deem appropriate, just, and equitable.

CARELLA, BYRNE, CECCHI
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiffs


By:___/s/ James E. Cecchi_____
        JAMES E. CECCHI

Dated: April 27, 2021

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292

Christopher A. Seeger
SEEGER WEISS
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
(973) 639-9100

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

CARELLA, BYRNE, CECCHI
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiffs


By:___/s/ James E. Cecchi_____
        JAMES E. CECCHI

Dated: April 27, 2021

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292

Christopher A. Seeger
SEEGER WEISS
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
(973) 639-9100