## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEAN VASADI, DANIELLE MOYER, JOSH SHEPHERD, LINDSEY STONEBRAKER, GREG TREACY, SCOTT TEITSCH, JEFFREY TAYLOR, ETHAN GALLOWAY, RIDGE BERRY, JUSTIN JONES, ANNA KING, SCOTT KING, GORDON FRIEND, LAURA LUCA, JOSE RODRIGUEZ, SAMUEL SMITH, AMBER O'CONNOR, JUSTIN O'CONNOR, LOGAN MCQUILLEN and CHARLES REGNA, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendant. | Civil Action No. 2:21-cv-10238 (WJM)(AME) |

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION

---

GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Tel: (973) 360-7900
Facsimile: (973) 301-8410
*Attorneys for Samsung*
*Electronics America, Inc.*

# **TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT..........................................................................1

II.  STATEMENT OF FACTS ...............................................................................4

III. ARGUMENT ...................................................................................................15

  A.   The standard governing motions to compel arbitration.................................15

  B.   The Arbitration Agreement is enforceable because SEA provided reasonable notice everywhere a consumer could be expected to look, and Plaintiffs manifested assent by opening, using, and setting up their devices without opting out. ……………………………………………………………………………...17

    1.   Formation simply requires reasonable notice and assent..........................18

    2.   There are at least three ways in which contracts can be formed, each of which is independently sufficient to compel arbitration..................................20

    3.   SEA has established formation based on the notice on the packaging, the "Terms and Conditions" inside the box and online, and the set-up process.....26

  C.   Arbitrability should be decided by the arbitrator. .........................................30

  D.   The Court should stay this case pending arbitration. ....................................32

IV. CONCLUSION ...............................................................................................34

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Family Mut. Ins. Co. v. TAMKO Bldg. Prods.*,
178 F. Supp. 3d 1121 (D. Colo. 2016)................................................................26

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011).............................................................................................16

*Athon v. Direct Merchs. Bank*,
2007 U.S. Dist. LEXIS 26841 (M.D. Ga. Apr. 11, 2007)...................................23

*Bell v. Royal Seas Cruises, Inc.*,
2020 U.S. Dist. LEXIS 85273 (S.D. Fla. May 13, 2020)...................................25

*Brower v. Gateway 2000*,
246 A.D.2d 246 (App. Div. 1st Dept. 1998) ......................................................22

*Burcham v. Expedia, Inc.*,
2009 U.S. Dist. LEXIS 17104 (E.D. Mo. Mar. 6, 2009)...................................25

*Campos v. Bluestem Brands, Inc.*,
2016 U.S. Dist. LEXIS 7592 (D. Or. Jan. 22, 2016) .........................................23

*Chamberlain v. LG Elecs. U.S.A., Inc.*,
2017 U.S. Dist. LEXIS 117968 (C.D. Cal. June 29, 2017)................................23

*Contec Corp. v. Remote Sol. Co.*,
398 F.3d 205 (2d Cir. 2005) ...............................................................................31

*Davidson & Assocs. v. Internet Gateway*,
334 F. Supp. 2d 1164 (E.D. Mo. 2004) ..............................................................22

*Davis v. Dell*,
2007 U.S. Dist. LEXIS 94767 (D.N.J. Dec. 28, 2007)................................17, 25

*Dougan v. Children's Place*,
2020 U.S. Dist. LEXIS 199985 (W.D. Wash. Oct. 27, 2020)...........................20

i

*Dye v. Tamko Bldg. Prods.*,
   908 F.3d 675 (11th Cir. 2018) ....................................................................*passim*

*Feldman v. Google, Inc.*,
   513 F. Supp. 2d 229 (E.D. Pa. 2007)...................................................................25

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995).............................................................................................17

*Frederick v. Law Office of Fox Kohler & Assocs. PLLC LLC*,
   2021 U.S. App. LEXIS 8551 (3d Cir. Mar. 24, 2021) .......................................17

*Gorny v. Wayfair Inc.*,
   2019 U.S. Dist. LEXIS 95619 (N.D. Ill. June 7, 2019)......................................19

*Gunawan v. Randstad Gen. Partner (US) LLC*,
   2013 WL 12142565 (C.D. Cal. Dec. 16, 2013)...................................................33

*Harris v. Green Tree Fin. Corp.*,
   183 F.3d 173 (3d Cir. 1999) ...............................................................................16

*HealthPlanCRM, LLC v. AvMed, Inc.*,
   458 F. Supp. 3d 308 (W.D. Pa. 2020)..................................................................19

*Hikers Indus., Inc. v. William Stuart Indus. (Far E.), Ltd.*,
   640 F. Supp. 175 (S.D.N.Y. 1986) ......................................................................33

*Hill v. Gateway 2000*,
   105 F.3d 1147 (7th Cir. 1997) ......................................................................22, 28

*Hite v. Lush Internet Inc.*,
   244 F. Supp. 3d 444 (D.N.J. 2017)......................................................................18

*Hoekman v. Tamko Bldg. Prods.*,
   2015 U.S. Dist. LEXIS 113414 (E.D. Cal. Aug. 24, 2015)................................26

*Horowitz v. AT&T Inc.*,
   2019 U.S. Dist. LEXIS 60 (D.N.J. Jan. 2, 2019)................................................30

*James v. Glob. Tel.\*Link Corp.*,
   852 F.3d 262 (3d Cir. 2017) .........................................................................19, 20

*Kai Peng v. Uber Techs., Inc.*,
237 F. Supp. 3d 36 (E.D.N.Y. 2017) ...........................................................30, 31

*King v. Capital One Bank (USA), N.A.*,
2012 U.S. Dist. LEXIS 163562 (W.D. Va. Nov. 15, 2012) ............................2, 5

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) .............................................................................29

*Leyva v. Certified Grocers of Cal. Ltd.*,
593 F.2d 857 (9th Cir. 1979) .............................................................................32

*Lloyd v. Hovensa*,
369 F.3d 263 (3d Cir. 2004) ..............................................................................32

*McGrath v. Doordash, Inc.*,
2020 U.S. Dist. LEXIS 207491 (N.D. Cal. Nov. 5, 2020) ................................15

*McNamara v. Samsung Telecomms. Am., LLC*,
2014 U.S. Dist. LEXIS 155520 (N.D. Ill. Nov. 3, 2014) ............................23, 29

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ................................................................................18

*Mgmt. Comput. Controls, Inc. v. Charles Perry Constr., Inc.*,
743 So. 2d 627 (Fla. Dist. Ct. App. 1999)........................................................22

*Mohebbi v. Khazen*,
2014 WL 6845477 (N.D. Cal. Dec. 4, 2014)....................................................33

*Morales v. Lexxiom, Inc.*,
2010 WL 11507515 (C.D. Cal. Jan. 29, 2010)..................................................33

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)........................................................................................31, 32

*Mucciariello v. Viator, Inc.*,
2019 U.S. Dist. LEXIS 166696 (D.N.J. Sep. 27, 2019) ...................................24

*Noble v. Samsung Elecs. Am., Inc.*,
682 F. App'x 113 (3d Cir. 2017) ...........................................................20, 27, 29

*Norcia v. Samsung Telcoms. Am., LLC*,
   845 F.3d 1279 (9th Cir. 2017) ..............................................................18, 21, 27

*Perry v. Thomas*,
   482 U.S. 483 (1987)......................................................................................16

*ProCD, Inc. v. Zeidenberg*,
   86 F.3d 1447 (7th Cir. 1996) ...........................................................................21

*Ramirez v. LQ Mgmt., L.L.C.*,
   2020 U.S. Dist. LEXIS 93975 (C.D. Cal. May 29, 2020)..................................16

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004) ...........................................................................20

*Roadway Package Sys. v. Kayser*,
   257 F.3d 287 (3d Cir. 2001) ...........................................................................16

*In re Samsung Elecs. Am., Inc.*,
   2008 U.S. Dist. LEXIS 105199 (D.N.J. Dec. 30, 2008)....................................23

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*
   *("In re Samsung Galaxy Litig.")*,
   298 F. Supp. 3d 1285 (N.D. Cal. 2018)..................................................23, 29, 33

*Santangelo v. Comcast Corp.*,
   2017 U.S. Dist. LEXIS 200935 (N.D. Ill. Dec. 6, 2017)..................................2, 5

*Schmidt v. Samsung Elecs. Am., Inc.*,
   2017 U.S. Dist. LEXIS 80768 (W.D. Wash. May 25, 2017) .................18, 24, 29

*Schwartz v. Comcast Corp.*,
   256 F. App'x 515 (3d Cir. 2007) ......................................................................23

*Shapiro v. Logitech, Inc.*,
   2019 U.S. Dist. LEXIS 15138 (D.N.J. Jan. 31, 2019)........................................18

*Snap-On Bus. Sols. Inc. v. O'Neil & Assocs.*,
   708 F. Supp. 2d 669 (N.D. Ohio 2010) ............................................................19

*Tan v. GrubHub, Inc.*,
   2016 U.S. Dist. LEXIS 186342 (N.D. Cal. July 19, 2016) ...............................2, 5

*Taylor v. Samsung Elecs. Am.*,
  2018 U.S. Dist. LEXIS 138657 (N.D. Ill. Aug. 16, 2018) ................................23

*Townsend v. Pinnacle Entm't, Inc.*,
  457 F. App'x 205 (3d Cir. 2012) ......................................................................31

*TracFone Wireless, Inc. v. Pak China Grp. Co.*,
  843 F. Supp. 2d 1284 (S.D. Fla. 2012) ........................................................21, 26

*Trippe Mfg. Co. v. Niles Audio Corp.*,
  401 F.3d 529 (3d Cir. 2005) .......................................................................16, 17

*United States v. Neumann Caribbean Int'l, Ltd.*,
  750 F.2d 1422 (9th Cir. 1985) ........................................................................32

*Vasquez v. Nat'l Enter. Sys.*,
  2021 U.S. Dist. LEXIS 72320 (D.N.J. Apr. 14, 2021) .......................................17

*Velasquez-Reyes v. Samsung Elecs. Am., Inc.*,
  2020 U.S. Dist. LEXIS 209802 (C.D. Cal. Oct. 20, 2020) ...................24, 25, 30

*Wolf v. Langemeier*,
  2010 U.S. Dist. LEXIS 87017 (E.D. Cal. Aug. 24, 2010).................................33

*In re Wyze Data Incident Litig.*,
  2020 U.S. Dist. LEXIS 196488 (W.D. Wash. Oct. 22, 2020)............................21

**Statutes**

9 U.S.C. § 2 ................................................................................................15, 16

9 U.S.C. §§ 3-4.................................................................................................1

Federal Arbitration Act ...........................................................................14, 15, 16

FAA section 3 ................................................................................................32

FAA Section 4 ................................................................................................16

Magnuson-Moss Warranty Act ...........................................................................4

New Jersey Consumer Fraud Act.........................................................................5

Samsung Electronics America, Inc. ("SEA") respectfully submits this Memorandum of Law in support of its motion, under 9 U.S.C. §§ 3-4, to stay this litigation and compel arbitration of the claims asserted by Jean Vasadi, Danielle Moyer, Josh Shepherd, Lindsey Stonebraker, Greg Treacy, Scott Teitsch, Jeffrey Taylor, Ethan Galloway, Ridge Berry, Justin Jones, Anna King, Scott King, Gordon Friend, Laura Luca, Jose Rodriguez, Samuel Smith, Logan McQuillen, and Charles Regna ("Plaintiffs").[1]

## I.   PRELIMINARY STATEMENT

SEA prominently informs purchasers of Galaxy S20 smartphones[2] that their devices are subject to binding Terms and Conditions—including an arbitration provision ("Arbitration Agreement")—everywhere a reasonable consumer may be expected to look: (1) on the outside of the box; (2) the first page of the printed Terms and Conditions in the box; (3) on-screen during the smartphone's set-up process that must be completed before the device can be used; (4) on SEA's website; and (5) on the device itself. The Arbitration Agreement provides that all disputes relating to or arising out of the sale, condition or performance of the Galaxy S20 are subject to

---

[1] SEA is not moving to compel arbitration of Amber and Justin O'Connor's claims because they opted out of the Arbitration Agreement.

[2] Although the specifications for each variant may differ, references in this brief to "Galaxy S20" smartphones generally include all variants, including the S20 FE, S20, S20+, and S20 Ultra.

1

final and binding arbitration. It also allows users to opt out of arbitration, without penalty, simply by emailing or calling SEA. Plaintiffs Amber and Justin O'Connor exercised this right and opted out of arbitration, thus confirming the conspicuousness of SEA's disclosures.[3]

All other Plaintiffs assented to and are bound by the Arbitration Agreement, which was disclosed to them (as it was disclosed to the Plaintiffs Amber and Justin O'Connor) in at least <u>three</u> independent ways.

*First*, the exteriors of their Galaxy S20 boxes informed them in bolded font:

**IMPORTANT INFORMATION**

**If you open the package, use or retain the device, you accept Samsung's Terms and Conditions, including an Arbitration Agreement. Full terms, warranty, and opt-out information are at www.samsung.com/us/Legal/Phone-HSGuide/, the enclosed materials & device settings.[4]**

---

[3] *See, e.g.*, *Santangelo v. Comcast Corp.*, 2017 U.S. Dist. LEXIS 200935, at *10-11 (N.D. Ill. Dec. 6, 2017) (holding that "by virtue of the act that he successfully opted out of the arbitration provision, [plaintiff] would be unable to assert, in any credible fashion, a number of arguments that would potentially undermine the provision's enforceability"); *Tan v. GrubHub, Inc.*, 2016 U.S. Dist. LEXIS 186342, at *7-8 (N.D. Cal. July 19, 2016) (holding that opt-out plaintiff cannot credibly argue against enforcement of arbitration provision and class action waiver); *King v. Capital One Bank (USA), N.A.*, 2012 U.S. Dist. LEXIS 163562, at *42-43 (W.D. Va. Nov. 15, 2012) (holding that plaintiff who did not agree to arbitrate "could not fairly and adequately represent in this Court the interests of individuals who are bound to pursue their claims in arbitration").

[4] The boxes for some carriers/models had slightly different language, stating "[i]f you use or retain this device, you accept Samsung's Terms and Conditions, including an Arbitration Agreement…."

*Second*, when Plaintiffs opened their Galaxy S20 boxes, they received a six-page pamphlet[5] prominently titled "Terms and Conditions," informing them on the cover in bolded font: "**Read this document before operating the mobile device, accessories or software (defined collectively and individual as the "Product"). This document contains important Terms and Conditions. Electronic acceptance, opening the packaging, use, or retention of the Product constitutes acceptance of this agreement….**" The first page of the pamphlet also highlighted the Arbitration Agreement, including where it could be found and how to easily opt out by email or phone within 30 days of purchase.

*Third*, and finally, SEA provided notice of the Terms and Conditions during the device set-up process. To activate and use their Galaxy S20s, Plaintiffs were required to click through a series of interactive screens. The first interactive screen provided hyperlinked "Terms and conditions" that, when clicked, would take Plaintiffs to the full Terms and Conditions, including the Arbitration Agreement.[6] Plaintiffs were unable to move to the next screen, complete the set-up process, and

---

[5] For AT&T only, the pamphlet is 14 pages due to the inclusion of the Terms and Conditions in Spanish.  The English portion of the AT&T Terms and Conditions contains six pages of text (the seventh page, which separates the English and Spanish versions, is blank).

[6] For some carriers, the word "Details" was hyperlinked and appeared directly underneath "Terms and Conditions."

activate their phones until they clicked the bubbles next to the "Terms and conditions" (and "Privacy Policy") or clicked the bubble next to, "I have read and agree to all of the above."

Thus, Plaintiffs agreed to the Arbitration Agreement in any (or all) of several ways: (1) opening the box and using their phones after the packaging told them that doing so would bind them; (2) using and keeping their phones after the in-box Terms and Conditions told them that doing so amounted to acceptance; (3) clicking a bubble acknowledging the Terms and Conditions during the on-screen set-up process; and (4) not opting out of arbitration (unlike the O'Connors), despite repeated notice of their right to do so without penalty. Thus, SEA has established formation.

All other issues have been delegated to the arbitrator, although the Arbitration Agreement is broad and easily covers the claims asserted in this case. Accordingly, the Court should enforce the Arbitration Agreement, compel Plaintiffs to arbitrate their claims on an individual basis, and stay this case.

## II.   <u>STATEMENT OF FACTS</u>

Plaintiffs generally allege that the cover for the camera module on the back of Galaxy S20 smartphones can shatter and that this somehow constitutes a defect. *See* First Amended Complaint [Dkt. No. 5] ("Complaint" or "Compl."), ¶ 2. Based on this allegation, Plaintiffs assert claims under the Magnuson-Moss Warranty Act and

New Jersey Consumer Fraud Act on behalf of a putative nationwide class, as well as claims under various state consumer protection statutes, concealment, and breach of warranty on behalf of state-specific subclasses. *Id.* at pp. 67-200. All Plaintiffs' claims, with the exception of the O'Connors'[7], are subject to arbitration.

### A. SEA provided conspicuous notice of the Arbitration Agreement everywhere a user might be expected to look, including on the outside of the Galaxy S20 box.

Galaxy S20 smartphones sold in the United States are packaged in a box with external labeling providing information about the device. Certification of Nicole Cantwell ("Cantwell Cert.") at ¶¶ 8, 10; Ex. A. At the top of the labeling, SEA informs consumers in bold font that the "**Packaging Contains … Terms and Conditions**." *Id.* at Ex. A.  Below that, SEA notifies users, in bold font, that opening, using or retaining the device constitutes acceptance of the Terms and Conditions, including an Arbitration Agreement:

---

[7] Even though the O'Connors opted out, they cannot represent any class. *See Santangelo*, 2017 U.S. Dist. LEXIS 200935, at *9 (opt-out plaintiff "cannot satisfy Rule 23(a)'s adequacy requirement because he cannot adequately represent the interests of the putative class members who are potentially bound by [defendant's] arbitration provision"); *Tan*, 2016 U.S. Dist. LEXIS 186342, at *8 (opt-out plaintiff "cannot satisfy either the typicality or adequacy requirements of Rule 23" because he is in a position unique from most other class members due to having opted out); *King* 2012 U.S. Dist. LEXIS 163562, at *42-43 (striking class allegations where plaintiff not subject to arbitration provision cannot "fairly and adequately represent . . . the interests of individuals who are bound to pursue their claims in arbitration").

**IMPORTANT INFORMATION**

**If you open the package, use or retain the device, you accept Samsung's Terms and Conditions, including an Arbitration Agreement. Full terms, warranty, and opt-out information are at www.samsung.com/us/Legal/Phone-HSGuide/, the enclosed materials & device settings.**

*Id.* at ¶¶ 9, 10; Ex. A.[8]

**B. The URL on the outside of the box for the Galaxy S20 leads directly to a full, stand-alone copy of the Arbitration Agreement.**

The URL listed on the box for Galaxy S20 smartphones leads directly to the full Arbitration Agreement on SEA's website. *Id.* at ¶ 13. In the version available before March 2021, the website was titled "Terms & Conditions / Health & Safety Information" and began by informing consumers: "Read this document before operating the mobile device, accessories, or software (defined collectively and individually as the "Product") and keep it for future reference. This document contains important Terms and Conditions. Electronic acceptance, opening the Product packaging, use of the Product, or retention of the Product constitutes acceptance of these Terms and Conditions." *Id.* at ¶ 14; Ex. B. It then provided a list of four agreements, the first of which was the "Arbitration Agreement." *Id.* When users clicked on "Arbitration Agreement," they would be taken straight to the full terms of the Arbitration Agreement. *Id.* The website also provided an active Table

---

[8] Certain mobile carriers use a slightly different format and language, stating that "use or retention" of the device constitutes acceptance. *Id.* at ¶ 11; Ex A.

of Contents, which allowed users to click on the Table to be taken directly to specific sections. *Id.* The Table of Contents listed the Arbitration Agreement in Section 1. *Id.* After the Table of Contents, the very first section of the website stated:

**Important Legal Information**

READ THIS INFORMATION BEFORE USING YOUR MOBILE DEVICE.

Arbitration Agreement - This Product is subject to a binding arbitration agreement between you and SAMSUNG ELECTRONICS AMERICA, INC. ("Samsung"). You can opt out of the agreement within 30 calendar days of the first consumer purchase by emailing optout@sea.samsung.com or calling 1-800-SAMSUNG (726-7864) and providing the applicable information. For complete terms and conditions that bind you and Samsung, refer to the "Arbitration Agreement" section of this document.

*Id.* The webpage also informed users that they could find more information in the printed Terms and Conditions included with their smartphone, on the SEA website, or on their smartphone (and how to find it). *Id.*

This webpage was slightly modified as of March 2021 but still begins with clear contractual language, stating: "Terms and Conditions. This Product is subject to a binding arbitration agreement between you and SAMSUNG ELECTRONICS AMERICA, INC." *Id.* at ¶ 16; Ex. C. Plaintiffs could then click a bubble next to "Arbitration Agreement" to access the full Agreement, which is prominently displayed as the first item on the site. *Id.*

The first lines of the Arbitration Agreement notify users that: "This is a binding legal agreement ('Agreement') between you (either individual or entity) and

7

Samsung Electronics America, Inc. ('Samsung')." *Id.* at Ex. C. The Agreement then

states that "[e]lectronic acceptance of the agreement, opening the product packaging,

use of the product, or continued possession of the product constitutes acceptance of

this agreement…." *Id.* A screenshot of the beginning portion of the scrollable copy

of the Arbitration Agreement on SEA's website is shown below:



*Id.* at ¶ 16; Ex. C.

**C. Inside the Galaxy S20 box, SEA provides a short pamphlet, again notifying users of the Terms and Conditions and Arbitration Agreement.**

The box for the Galaxy S20 contains a six-page (three pages front and back) pamphlet titled "Terms and Conditions." *Id.* at ¶¶ 18-19; Ex. D.[9] The cover page informed Plaintiffs that "[e]lectronic acceptance, opening the packaging, use, or retention of the Product constitutes acceptance" of the Terms and Conditions, which include the Arbitration Agreement:

## Terms and Conditions

Read this document before operating the mobile device, accessories, or software (defined collectively and individually as the "Product") and keep it for future reference. This document contains important Terms and Conditions. Electronic acceptance, opening the packaging, use, or retention of the Product constitutes acceptance of these Terms and Conditions.

*Id.* at ¶ 19-20; Ex. D. In addition, SEA called out the Arbitration Agreement immediately after the cover, on the top of the first page of each Plaintiff's pamphlet:

---

[9] As described in footnote five, *supra*, AT&T's pamphlet is fourteen pages due to the inclusion of the Terms and Conditions in Spanish, but the English version contains six pages of text. *See id.* at ¶ 19.

For AT&T only, the pamphlet is 14 pages due to the inclusion of the Terms and Conditions in Spanish.  The English portion of the AT&T Terms and Conditions contains six pages of text (the seventh page, which separates the English and Spanish versions, is blank).

## Important legal information

**Arbitration Agreement -** This Product is subject to a binding arbitration agreement between you and SAMSUNG ELECTRONICS AMERICA, INC. ("Samsung"). You can opt out of the agreement within 30 calendar days of the first consumer purchase by emailing optout@sea.samsung.com or calling 1-800-SAMSUNG (726-7864) and providing the applicable information.

The full Arbitration Agreement, Standard One-year Limited Warranty, End User License Agreement (EULA), and Health & Safety Information for your device are available online:

- English: www.samsung.com/us/Legal/Phone-HSGuide
- Spanish: www.samsung.com/us/Legal/Phone-HSGuide-SP

This information can also be found on the device in the "About device" or "About phone" or "About tablet" section, for example:

- **Settings** › **About phone** or **About device** or **About tablet** › **Legal information** › **Samsung legal**
- Or, Search "Legal"

If your device required Federal Communications Commission (FCC) approval, you can view the FCC certification by opening Settings › About phone or About device or About tablet› Status.

*Id.* at ¶ 21; Ex. D.

**D.     During the on-screen device set-up process, SEA again notified Plaintiffs of the Terms and Conditions and required Plaintiffs to affirmatively acknowledge them.**

Before Plaintiffs could use their phones, they were required to complete an onscreen set-up process on their phones. *Id.* at ¶¶ 24, 31. Plaintiffs could not complete the set-up process and start using their phones until they affirmatively acknowledged the Terms and Conditions, including its Arbitration Agreement. *Id.* at ¶¶ 26-31.

SEA presented the set-up process through a series of interactive screens on Plaintiffs' Galaxy S20 smartphones. *Id.* at ¶ 25. After Plaintiffs initiated the set-up process, the first screen included a hyperlink to the "Terms and Conditions" as the

very first item. *Id.* at ¶ 26. Before Plaintiffs could move to the next screen, activate, or use their phones, they had to affirmatively click on and acknowledge the bubbles next to "Terms and conditions" and "Privacy Policy" or click the bubble next to "I have read and agree to all of the above." *Id.* at ¶¶ 26-27. The below screenshot shows an example of how this screen appears before the user clicks on any bubbles:



*Id.* at ¶ 26. For some carriers, the hyperlinked word "Details" appears immediately under "Terms and conditions." *Id.* at ¶ 27. After the user clicks on the bubbles next to "Terms and conditions" and "Privacy Policy" or the bubble next to "I have read and agree to all of the above," the "Next" button would activate, and the user could move to the next screen. *Id.* at ¶ 29. When users click on the hyperlinked "Terms and conditions" or "Details," they are presented with a scrollable screen showing the Terms, the first provision of which is the "ARBITRATION AGREEMENT":



*Id.* at ¶ 28; Ex. E.

### E. The Terms and Conditions also were on each Galaxy S20 smartphone.

The Terms and Conditions and Arbitration Agreement also remain accessible on Plaintiffs' devices at all times. *Id.* at ¶ 32. As the printed in-box "Terms and Conditions" pamphlet informs users:

> This information can also be found on the device in the "About device" or "About phone" or "About tablet" section, for example:
>
> - **Settings > About phone** or **About device** or **About tablet > Legal information > Samsung legal**
> - Or, search "**Legal**"

*Id.* at ¶ 33.

### F. The Terms of the Arbitration Agreement.

The Arbitration Agreement contains a broad provision requiring arbitration of all disputes relating to or arising in any way from the sale, condition or performance of the Galaxy S20:

> YOU AND SAMSUNG EACH AGREE THAT ALL DISPUTES BETWEEN YOU AND SAMSUNG RELATING IN ANY WAY TO OR ARISING IN ANY WAY FROM THE STANDARD LIMITED WARRANTY OR THE SALE, CONDITION OR PERFORMANCE OF THE PRODUCT SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, AND NOT BY A COURT OR JURY.

*Id.* at ¶ 34; Exs. B, C, E. The Arbitration Agreement also identifies the applicable rules and where they can be found:

> The arbitration shall be conducted according to the American Arbitration Association (AAA) Commercial Arbitration Rules applicable to consumer

13

> disputes. The AAA Rules are available online at adr.org or by calling the AAA at adr.org or by calling 1-800-778-7879. This Agreement is entered into pursuant to the Federal Arbitration Act.

*Id.* at ¶ 36; Exs. B, C, E. In addition, the Arbitration Agreement provides that *the arbitrator* "shall decide all issues of interpretation and application of this Agreement." *Id.* at ¶ 37, Exs. B, C, E.

### G. The Arbitration Agreement also informed Plaintiffs how to opt out, and two Plaintiffs did so, further confirming that the Arbitration Agreement is presented in a conspicuous manner.

The Arbitration Agreement contains an opt-out provision, allowing users to opt out of arbitration without penalty. *Id.* at ¶ 38, Exs. B, C, E. The effectiveness of this provision is readily apparent based on Plaintiffs Amber and Justin O'Connor. The O'Connors bought their phones in April 2021 (Compl., ¶¶ 134, 137), and later emailed SEA with notice of their decision to opt out. *Id.* at ¶ 140; *see also* Cantwell Cert. at ¶¶ 39-40; Ex F.

### H. Plaintiffs' contradictory allegations about the Arbitration Agreement.

For most Plaintiffs, the Complaint simply ignores SEA's prominent and repeated notices of the Terms and Conditions, as well as their affirmative acknowledgment of the Terms and Conditions during the set-up process. Other Plaintiffs, however, seem to have anticipated this motion and allege that a salesperson activated their phones.[10] Yet, as explained below, Plaintiffs cannot

---

[10] *See, e.g.*, Compl. ¶¶ 49, 57, 75, 84, 111, 128, 146.

evade arbitration by claiming that they delegated responsibility for setting up their phones to someone else.

Other Plaintiffs generally allege they are "not familiar" with the Arbitration Agreement or have not seen it,[11] yet the Complaint also concedes that SEA provided notice, including on the box. *See* Compl., ¶ 29 (providing blurry picture of a Galaxy S20 box, which nevertheless shows notice of the Arbitration Agreement and that consumers' use or retention of the device constitutes acceptance of the Arbitration Agreement). Plaintiffs also complain that the Arbitration Agreement was not referenced in an online "spec sheet" (that no Plaintiff claims to have reviewed) or the in-box "Quick Start Guide" (*id.* at ¶¶ 203-04), ignoring that the box prominently disclosed the Terms and Conditions in a standalone document.

## III.   <u>ARGUMENT</u>

### A.   **The standard governing motions to compel arbitration.**

The Federal Arbitration Act ("FAA") empowers courts to compel arbitration, providing that arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA governs cases like this one, where the Arbitration Agreement provides that it "is entered into pursuant to the Federal Arbitration Act." Cantwell Cert., ¶ 36; Exs. B, C, E; *see also McGrath v. Doordash, Inc.*, 2020 U.S.

---

[11] *See, e.g.*, *id.* at ¶¶ 12, 34, 93, 102, 120, 137, 146, 155.

Dist. LEXIS 207491, at *12 (N.D. Cal. Nov. 5, 2020) (holding that FAA governs because agreement "expressly provides that the FAA governs the agreement"); *Ramirez v. LQ Mgmt., L.L.C.*, 2020 U.S. Dist. LEXIS 93975, at *5 n.3 (C.D. Cal. May 29, 2020) (holding that FAA applies "based on the Agreement's express invocation of the FAA").[12]

The "principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 344 (2011) (internal quotation marks, alterations, and citation omitted); *see also Perry v. Thomas*, 482 U.S. 483, 490-91 (1987) (arbitration agreements within scope of FAA must be rigorously enforced). Indeed, it is well established that "[f]ederal law presumptively favors the enforcement of arbitration agreements." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999). Section 4 of the FAA thus "requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement." *Concepcion*, 563 U.S. at 344 (quoting 9 U.S.C. § 4).

---

[12] The FAA also applies because the Arbitration Agreement "evidenc[es] a transaction involving [interstate] commerce" (9 U.S.C. § 2; *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005)), in that it relates to a product distributed by SEA, a New Jersey entity, and purchased or leased by Plaintiffs from 13 states across the country. *See Roadway Package Sys. v. Kayser*, 257 F.3d 287, 292 (3d Cir. 2001).

"A motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists, and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co.*, 401 F.3d at 532. But when the agreement delegates the "arbitrability question itself" to the arbitrator, the arbitrator decides if a particular dispute falls within the agreement's scope. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995). Here, the Court need only decide the first question—whether an agreement exists—because the second question has been delegated to the arbitrator. Cantwell Cert., ¶ 37; Exs. B, C, E.

> **B.      The Arbitration Agreement is enforceable because SEA provided reasonable notice everywhere a consumer could be expected to look, and Plaintiffs manifested assent by opening, using, and setting up their devices without opting out.**

In addressing formation, the Court applies "ordinary state-law principles that govern the formation of contracts." *Vasquez v. Nat'l Enter. Sys.*, 2021 U.S. Dist. LEXIS 72320, at *4-5 (D.N.J. Apr. 14, 2021) (internal quotation marks and citations omitted); *Davis v. Dell*, 2007 U.S. Dist. LEXIS 94767, at *11 (D.N.J. Dec. 28, 2007). In this case, Plaintiffs filed their claims in New Jersey yet purchased and used their devices in 13 different states—any of which may provide the "ordinary state-law

principles" that apply here. Yet, no matter which state's law may apply, SEA has

shown formation under basic principles of notice and assent.[13]

### 1.    Formation simply requires reasonable notice and assent.

"To form a contract, there must be mutual manifestation of assent, whether by

written or spoken word or by conduct." *Meyer*, 868 F.3d at 74. "Where there is no

evidence that the offeree had actual notice of the terms of the agreement, the offeree

will still be bound by the agreement if a reasonably prudent user would be on inquiry

---

[13] *See, e.g.*, *Frederick v. Law Office of Fox Kohler & Assocs. PLLC LLC*, 2021 U.S. App. LEXIS 8551, at *5 (3d Cir. Mar. 24, 2021) (holding that even where there is a conflict, "we need not decide which state's law applies because, even under the more stringent rule for enforcing arbitration agreements, the [defendant] prevails"); *Shapiro v. Logitech, Inc.*, 2019 U.S. Dist. LEXIS 15138, at *13 n.2 (D.N.J. Jan. 31, 2019) (finding "no actual conflict" between New Jersey and Washington law); *Beture v. Samsung Elecs. Am.*, Inc., 2018 U.S. Dist. LEXIS 121801, at *14 (D.N.J. July 18, 2018) (Chesler, J.) (finding "no conflict between applying New Jersey, Texas, and New York substantive law to contract formation" and stating that, "[t]o have a meeting of the minds, the contract must provide reasonable notice to each party of its contractual terms."); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77 (2d Cir. 2017) (applying California law and explaining that "[t]he touchstone of the analysis is whether reasonable people . . . would have known about the terms and the conduct that would be required to assent to them." (citation omitted)); *Schmidt v. Samsung Elecs. Am., Inc.*, 2017 U.S. Dist. LEXIS 80768, at *9 (W.D. Wash. May 25, 2017) (plaintiffs agreed to arbitration under Washington and California law when they had adequate notice of terms and failed to return the device or opt out); *Hite v. Lush Internet Inc.*, 244 F. Supp. 3d 444, 450 n.3 (D.N.J. 2017) ("[W]ith respect to whether a valid agreement exists between the parties, the Court's analysis ends with the first prong of the New Jersey test because there is no conflict between New Jersey and California law on this question.").

notice of the terms." *Id.* at 74-75; *Beture*, 2018 U.S. Dist. LEXIS 121801, at \*14 ("the contract must provide reasonable notice to each party of its contractual terms").

Fundamentally, the question is simply whether "the terms are reasonably conspicuous" so that "the user can be fairly charged with 'constructive notice' that continued use will constitute acceptance of the agreement." *HealthPlanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 331 (W.D. Pa. 2020); *James v. Glob. Tel.\*Link Corp.*, 852 F.3d 262, 266-67 (3d Cir. 2017) (recognizing enforceability of terms provided through a hyperlink in an online transaction or in the box with a consumer product); *Gorny v. Wayfair Inc.*, 2019 U.S. Dist. LEXIS 95619, at \*13 (N.D. Ill. June 7, 2019) ("[T]he Court must ask whether the web pages presented to the consumer adequately communicate all the terms and conditions of the agreement, and whether the circumstances support the assumption that the purchaser receives reasonable notice of those terms."); *Dye v. Tamko Bldg. Prods.*, 908 F.3d 675, 681 (11th Cir. 2018) (courts "have recognized that a vendor's prerogative to specify conduct that constitutes acceptance includes inviting acceptance by unwrapping a product"); *Snap-On Bus. Sols. Inc. v. O'Neil & Assocs.*, 708 F. Supp. 2d 669, 682 (N.D. Ohio 2010) ("Courts have also found constructive knowledge alone sufficient so long as the website host placed notice of the [agreement] prominently and provided easy access to the full [agreement] terms."). SEA has satisfied this standard in multiple, independent ways.

2. **There are at least three ways in which contracts can be formed, each of which is independently sufficient to compel arbitration.**

In cases involving enforceability of contract terms for products, including electronic devices like the Galaxy S20, courts often are confronted with one of three contract-formation scenarios: (1) shrinkwrap agreements where notice is provided on the outside of the box; (2) in-box notice where notice is provided inside the box and the user is given an opportunity to opt out or return the device; or (3) clickwrap agreements where notice is provided electronically and users assent by clicking a box or button. Here, the Galaxy S20 satisfies *all three* scenarios, thus creating an enforceable agreement in any of three ways. *See Dougan v. Children's Place*, 2020 U.S. Dist. LEXIS 199985, at *12-13 (W.D. Wash. Oct. 27, 2020) (where notice of terms and conditions is provided in multiple locations, each disclosure adequately informs consumers and provides constructive notice of existence of governing terms and conditions).

*First*, in shrinkwrap cases, the business provides notice of terms and conditions on the outside of the box and "specif[ies] conduct that constitutes acceptance," including "inviting acceptance by unwrapping a product." *Dye*, 908 F.3d at 681; *see also James*, 852 F.3d at 267 ("consumers in the shrinkwrap-license cases received physical copies of the terms and conditions upon opening the products, and their subsequent use of the products manifested assent to the enclosed terms"); *Noble v. Samsung Elecs. Am., Inc.*, 682 F. App'x 113, 117 (3d Cir. 2017)

20

(recognizing that the packaging or the cover of the document containing the arbitration agreement typically includes "language indicating that bilateral contractual terms or conditions are inside"); *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 428 (2d Cir. 2004) (similar). Thus, "[w]here a notice on a package states that the user agrees to certain terms by opening the package, a court could reasonably conclude . . . that the user has a duty to act in order to negate the conclusion that the consumer had accepted the terms in the notice." *Norcia v. Samsung Telcoms. Am., LLC*, 845 F.3d 1279, 1287 (9th Cir. 2017) (applying California law); *see also ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1449 (7th Cir. 1996) (noting that shrinkwrap agreements are generally enforceable); *In re Wyze Data Incident Litig.*, 2020 U.S. Dist. LEXIS 196488, at *6-7 (W.D. Wash. Oct. 22, 2020) (state law "clearly allows for the enforcement of 'shrink-wrap' agreements, even if the consumer did not read the agreement").

In *TracFone Wireless, Inc. v. Pak China Grp. Co.*, 843 F. Supp. 2d 1284 (S.D. Fla. 2012), for example, the court found that "[t]he outside retail packaging of TracFone's Phones contains conspicuous language . . . that provides in part 'by purchasing or opening this package, you are agreeing to these terms and the terms and conditions of service in the enclosed user guide." *Id.* at 1298. The court held that this language, coupled with plaintiffs' opening and using the phones, created an enforceable contract. *Id.*; *see also Dye*, 908 F.3d at 681 (explaining that, where

notice of terms is provided on packaging, valid acceptance occurs upon purchaser's failure to return the product).

These types of agreements are now ubiquitous, and reasonable consumers "should (and must) know that vendors will often employ a 'simple approve-or-return' model, enclosing their full legal terms with a product at shipment." *Dye*, 908 F.3d at 683. Thus, as the Eleventh Circuit put it, "modern consumers are on notice that products come with warranties and other terms and conditions of purchase. And they are free to research (or not), request (or not), and read (or not) those terms before unwrapping their purchases." *Id.* But the law "makes clear that providing conspicuously printed product packaging is an OK way to convey purchase terms"; therefore, "consumers who purchase, open, and retain a product are thus bound in accordance with warranty terms conspicuously printed on that product's packaging, whether they actually take the time to read them or not." *Id.* at 683-84.[14]

*Second*, agreements are routinely enforced where the business provides notice of terms inside the product packaging and the consumer can return the product or

---

[14] *See also Davidson & Assocs. v. Internet Gateway*, 334 F. Supp. 2d 1164, 1178 (E.D. Mo. 2004) (agreement enforceable where the outside packaging stated that product was subject to a contract and the full terms were disclosed before installation); *Mgmt. Comput. Controls, Inc. v. Charles Perry Constr., Inc.*, 743 So. 2d 627, 632 (Fla. Dist. Ct. App. 1999) (agreement enforceable where packaging warned consumer that "opening the software package would be an acceptance of terms" of the agreement); *Brower v. Gateway 2000*, 246 A.D.2d 246, 250-51 (App. Div. 1st Dept. 1998) (arbitration agreement enforceable where packaging provides notice of terms and consumer failed to return product within time specified).

opt out of arbitration after having had an opportunity to review the terms.[15] Courts applying New York, Florida, Washington, Illinois, Massachusetts and Maryland law have all held that "terms inside a box … bind consumers who use the software after an opportunity to read the terms and to reject them by returning the product" or opting out. *See Chamberlain v. LG Elecs. U.S.A., Inc.*, 2017 U.S. Dist. LEXIS 117968, at \*8 (C.D. Cal. June 29, 2017) (collecting cases); *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig. ("In re Samsung Galaxy Litig.")*, 298 F. Supp. 3d 1285, 1299 (N.D. Cal. 2018) (enforcing arbitration agreement because "when the consumer dumped out the contents of the box to retrieve the phone, he or she would be confronted with the guidebook," which contained "important terms and conditions" and informed consumers that "[b]y using this device, you accept those terms and conditions").[16]

---

[15] *See, e.g.*, *Hill v. Gateway 2000*, 105 F.3d 1147, 1148 (7th Cir. 1997) (discussing "the many commercial transactions in which people pay for products with terms to follow").

[16] *See also Schwartz v. Comcast Corp.*, 256 F. App'x 515, 520 (3d Cir. 2007) (finding a valid agreement to arbitrate where "the terms of the contract were available to Schwartz via the web site, and thus they are binding, despite the fact that he was unaware of them"); *Taylor v. Samsung Elecs. Am.*, 2018 U.S. Dist. LEXIS 138657, at \*8 (N.D. Ill. Aug. 16, 2018) ("plaintiff's conduct, using the phone and not taking advantage of the 30-day opt-out provision, manifested his assent to the terms contained within the Guide, which he had the opportunity to read either online or on the phone itself"); *Campos v. Bluestem Brands, Inc.*, 2016 U.S. Dist. LEXIS 7592, at \*26 (D. Or. Jan. 22, 2016) ("cardholder who actually receives a credit agreement and then uses the credit account may, however, be bound to the agreement's terms regardless of whether the cardholder signs the agreement or verbally assents to it"); *McNamara v. Samsung Telecomms. Am., LLC*, 2014 U.S.

In *Schmidt v. Samsung Elecs. Am., Inc.*, for example, the court found that the plaintiffs assented to arbitration where their smartphones' boxes contained "Product Safety and Warranty Information" brochures warning consumers on the cover that they contained "important terms and conditions with respect to your device" and that "[b]y using this device, you accept those terms and conditions." 2017 U.S. Dist. LEXIS 80768 at *4-5, 12. The arbitration agreement appeared on either the 21st or 33rd page (depending on carrier) of the brochure. *Id.* at *4-5. Based on these disclosures, the court held that "a 'reasonable person' was on notice of the arbitration agreement, and thus Plaintiffs assented[.]" *Id.* at *12.

*Finally*, clickwrap agreements are readily enforced by courts in all of the applicable states, which find that the consumer's act of "clicking a dialog box on the screen to proceed with the transaction" manifests "consent to terms or conditions." *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, 2020 U.S. Dist. LEXIS 209802, at *7 (C.D. Cal. Oct. 20, 2020); *Beture*, 2018 U.S. Dist. LEXIS 121801, at *4 (similar);

---

Dist. LEXIS 155520, at *6 (N.D. Ill. Nov. 3, 2014) (opting out within 30-day period, as communicated to plaintiffs in document inside packaging, was "a relatively simple act" by which "one can be excluded from the arbitration requirement" without having to return their product); *In re Samsung Elecs. Am., Inc.*, 2008 U.S. Dist. LEXIS 105199, at *13 (D.N.J. Dec. 30, 2008) (agreement included inside product packaging enforceable); *Athon v. Direct Merchs. Bank*, 2007 U.S. Dist. LEXIS 26841, at *11 (M.D. Ga. Apr. 11, 2007) (agreement formed where plaintiffs received notice of terms and "demonstrate[d] their assent to be bound by the agreement by acting upon or accepting benefits under the contract containing the arbitration agreement").

*Mucciariello v. Viator, Inc.*, 2019 U.S. Dist. LEXIS 166696, at *15 (D.N.J. Sep. 27, 2019) (online agreements "have been found to be enforceable under New Jersey law, when the pertinent terms and provisions are hyperlinked, and the user must perform an action to provide assent, such as, for example, clicking on a button").[17] In *Velasquez-Reyes*, for example, the plaintiff had a sales representative complete the set-up process for his device. 2020 U.S. Dist. LEXIS 209802, at *3. During that process, users were presented with a screen titled "Terms and conditions," including a link to the terms containing an arbitration provision. *Id.* "The user cannot proceed with the set-up process and use the phone until clicking a bubble next to the words 'Terms and Conditions' or 'Agree to all' and then clicking 'Next.'" *Id.* at *3-4. Even though the store representative clicked the bubble, the court readily found formation. *Id.* at *10 ("the Court finds that Samsung has met its burden of showing that Baclija consented to the Arbitration Agreement through the clickwrap set-up process"); *see also Beture*, 2018 U.S. Dist. LEXIS 121801, at *18 (rejecting argument that plaintiffs did not consent because store representatives "performed the activation steps and clicked-through [the terms] on behalf of the customers").

---

[17] *See also Bell v. Royal Seas Cruises, Inc.*, 2020 U.S. Dist. LEXIS 85273, at *15 (S.D. Fla. May 13, 2020) ("A 'clickwrap' agreement occurs when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions."); *Burcham v. Expedia, Inc.*, 2009 U.S. Dist. LEXIS 17104, at *7 (E.D. Mo. Mar. 6, 2009) (similar); *Davis*, 2007 U.S. Dist. LEXIS 94767, at *14; *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007).

**3.   SEA has established formation based on the notice on the packaging, the "Terms and Conditions" inside the box and online, and the set-up process.**

Any one of these scenarios is sufficient for formation; SEA has demonstrated

formation in all three: (1) notice on the outside of the box; (2) additional notice and

Terms and Conditions in the box and online; and (3) an electronic set-up process

that required users to affirmatively acknowledge the Terms and Conditions.

*First*, as shown, every Galaxy S20 box contains a label informing purchasers

that (1) the device is subject to Terms and Conditions, including the Arbitration

Agreement; (2) opening the packaging, using the device, or retaining the device

constitutes acceptance; and (3) the URL and physical location of the Terms and

Conditions (in the box). Cantwell Cert. ¶¶ 7-12; Ex. A. As in *TracFone Wireless*,

this language, coupled with Plaintiffs' use of the device, constitutes assent. 843 F.

Supp. 2d at 1298 (similar language on outside of box creates enforceable contract).[18]

---

[18] Courts across multiple jurisdictions have enforced agreements under similar facts. *See, e.g.*, *Dye*, 908 F.3d at 684; *Am. Family Mut. Ins. Co. v. TAMKO Bldg. Prods.*, 178 F. Supp. 3d 1121, 1126 (D. Colo. 2016) ("The wrapper affixed to each bundle of shingles specifically and conspicuously provided that opening the package would constitute acceptance of the terms of the Limited Warranty, including the arbitration clause, printed on the wrapper. By opening the bundles, [plaintiffs' agent] created a contract implied in fact."); *Hoekman v. Tamko Bldg. Prods.*, 2015 U.S. Dist. LEXIS 113414, at *12 (E.D. Cal. Aug. 24, 2015) (declaration establishing that packaging notified plaintiffs of terms and conduct that would constitute acceptance proved formation by a preponderance of the evidence).

Plaintiffs may cite the decisions in *Norcia* and *Noble* in an attempt to sidestep arbitration, but both cases confirm that SEA's notice on the Galaxy S20 packaging establishes formation. In *Norcia*, the Ninth Circuit explained that, "[w]here a notice on a package states that the user agrees to certain terms by opening the package, a court could reasonably conclude, consistent with California contract law, that the user has a duty to act in order to negate the conclusion that the consumer had accepted the terms in the notice." *Norcia*, 845 F.3d at 1287 (declining to enforce agreement encountered for the first time on page 76 of an in-box brochure where "the outside of the Galaxy S4 box did not notify the consumer that opening the box would be considered agreement to the terms set forth in the brochure"). Similarly, in *Noble*, the Third Circuit explained that, in cases enforcing shrinkwrap agreements, the packaging or the cover of the document containing the arbitration agreement typically includes "language indicating that bilateral contractual terms or conditions are inside." *Noble*, 682 F. App'x at 117 (declining to enforce agreement "where the only manner in which a consumer could receive notice of the Clause at issue here would be to read ninety-seven pages into the Guide where the Clause appears, or to happen upon page ninety-seven by luck").[19] This is *precisely* what SEA has done

---

[19] Although *Noble* and *Norcia* involved denials of motions to compel arbitration, they confirm formation based on the facts of this case. In stark contrast to the facts that led the courts in *Noble* and *Norcia* to decline to enforce the provisions at issue in those cases, SEA notified Plaintiffs of the Arbitration Agreement at every point a reasonable consumer of a smartphone might expect such information—on the box,

with the Galaxy S20—the packaging provides clear notice, in classic contractual language that (i) opening, use, or retention of their smartphones was acceptance, and (ii) the Terms and Condition could be found inside the package, on SEA's website (at a specific URL), and on their devices.

*Next*, as promised on the packaging, Plaintiffs received a six-page pamphlet that was titled "Terms and Conditions" in the box and that highlighted the Arbitration Agreement. Cantwell Cert. at ¶¶ 18-19; Ex. D. The cover page included a stand-alone paragraph in bold informing Plaintiffs at the outset to read the Terms and that "[e]lectronic acceptance, opening the packaging, use, or retention of the Product constitutes acceptance of these Terms and Conditions." *Id.* at ¶¶ 19-20; Ex. D. On the top of the first page, Plaintiffs were told that they could opt out of the Arbitration Agreement within 30 days and how to easily do so (as the O'Connors successfully did). *Id.* at ¶ 21; Ex. D. Plaintiffs also received step-by-step instructions on how to locate the full Arbitration Agreement on their device and online. *Id.*

In other words, SEA provided notice of the Terms and Conditions everywhere a reasonable consumer might be expected to look, and courts enforce such terms when reasonable notice is provided, even if consumers do not read them.[20] As in

---

in the box, and electronically during the set-up process before Plaintiffs could even use their phones.

[20] *See, e.g.*, *Hill*, 105 F.3d at 1149 ("Customers as a group are better off when vendors skip costly and ineffectual steps such as telephonic recitation, and use instead a simple approve-or-return device. Competent adults are bound by such

*Schmidt* and *In re Samsung Galaxy Litig.*, this notice, coupled with Plaintiffs' use of their devices without opting out or returning them, is assent. *See Schmidt*, 2017 U.S. Dist. LEXIS 80768 at **4-5, 12; *In re Samsung Galaxy Litig.*, 298 F. Supp. 3d at 1299; *see also Dye*, 908 F.3d at 683-84 ("consumers who purchase, open, and retain a product are thus bound in accordance with warranty terms conspicuously printed on that product's packaging, whether they actually take the time to read them or not").

*Finally*, even if a Plaintiff never saw the notice on the packaging, or on SEA's website, or the in-box Terms and Conditions, Plaintiffs were required to complete the set-up process—which required them to acknowledge the Terms and Conditions by clicking on the bubble next to "Terms and conditions" or "I have read and agree to all of the above"—before using their phones. Cantwell Cert. at ¶¶ 23-31. Every

---

documents, read or unread."); *Dye*, 908 F.3d at 683-84 ("[M]odern consumers are on notice that products come with warranties and other terms and conditions of purchase . . . [and] consumers who purchase, open, and retain a product are thus bound in accordance with warranty terms conspicuously printed on that product's packaging, whether they actually take the time to read them or not"); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 567 (9th Cir. 2014) (when notice is provided, "a party cannot avoid the terms of a contract by failing to read them"); *McNamara*, 2014 U.S. Dist. LEXIS 155520 at *6-7 (explaining that smartphones are "by their nature are extremely complicated and provide for a multitude of activities. Because of these qualities, a purchaser would be expected to review the product user guide in order to get as much out of the product as he can."); *Noble*, 682 F. App'x at 116 ("Once there is reasonable notice, a party is bound by those terms, even if he failed to read them.").

Plaintiff alleges they activated or used their devices,[21] leaving no doubt that they completed the set-up process, received ample notice of the Terms and Conditions, and agreed to those Terms. *See Velasquez-Reyes*, 2020 U.S. Dist. LEXIS 209802, at *3-4; *Horowitz v. AT&T Inc.*, 2019 U.S. Dist. LEXIS 60, at *25 (D.N.J. Jan. 2, 2019) ("Plaintiffs accepted the terms of the Arbitration Agreement by receiving notice of the agreement, clicking on the link, and failing to opt out within the deadline."). [22]

## C.   Arbitrability should be decided by the arbitrator.

Parties can agree to arbitrate "gateway" questions such as "whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 52 (E.D.N.Y. 2017). And it is well established that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an

---

[21] *See* Compl., ¶¶ 12, 22, 34, 41, 49-50, 57, 66, 75, 84, 93, 102, 111, 120, 128, 146, 155.

[22] Whether an in-store representative helped Plaintiffs with the set-up process is of no consequence. The Court rejected this argument in *Beture*. 2018 U.S. Dist. LEXIS 121801 at *18-19; *see also Dye*, 908 F.3d at 684-86 (holding that agent acting within scope of authority can bind consumer to arbitration agreement); *Velasquez-Reyes,* 2020 U.S. Dist. LEXIS 209802 at *9 (rejecting argument that plaintiff not bound because sales representative set up phone). And no matter who set up their devices, Plaintiffs had inquiry notice of the Terms through the disclosures on packaging, the in-box Terms and Conditions, and the disclosures provided during the set-up process.

arbitrator." *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *see also* AAA R-14(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement").[23]

Here, the Arbitration Agreement states that "[t]he arbitrator shall decide all issues of interpretation and application of this Agreement" and that "[t]he arbitration shall be conducted according to the American Arbitration Association (AAA) Commercial Arbitration Rules applicable to consumer disputes." Cantwell Cert., ¶ 36; Exs. C, E. This language delegates issues of arbitrability to the arbitrator. *See Kai Peng*, 237 F. Supp. 3d at 52-53 (provision stating that arbitrator would decide disputes "arising out of or relating to *interpretation or application* of th[e] Arbitration Agreement" was clear and unmistakable delegation (emphasis added)). Thus, any dispute about whether Plaintiffs' claims are within the scope of the Arbitration Agreement has been delegated to the arbitrator.[24]

---

[23] Once the Court finds formation, the Arbitration Agreement's New York choice of law provision applies. Cantwell Cert., Exs. B, C, E.

[24] Even if this Court were to address arbitrability despite the delegation provision, Plaintiffs' claims easily fall within the scope of the Arbitration Agreement. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Townsend v. Pinnacle Entm't, Inc.*, 457 F. App'x 205, 207 (3d Cir. 2012). The Arbitration Agreement applies to "all disputes" between SEA and the Plaintiff "relating in any way to or arising in any way from the standard limited warranty or the sale, condition or performance of the product[.]" Cantwell Cert., ¶ 34; Exs. B, C, E. Here, Plaintiffs allege that the Galaxy S20's

### D.     The Court should stay this case pending arbitration.

The Court should stay this case for several reasons. As an initial matter, section 3 of the FAA requires a stay. *Lloyd v. Hovensa*, 369 F.3d 263, 269 (3d Cir. 2004) ("[T]he statute clearly states, without exception, that whenever suit is brought on an arbitrable claim, the Court 'shall' upon application stay the litigation until arbitration has been concluded" (citing 9 U.S.C. § 3)). Moreover, efficiency, preservation of resources, and judicial economy weigh in favor of a stay. *See United States v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985) (staying all proceedings in case, including non-arbitrable third party complaint, pending arbitration for reasons of "economy and efficiency"); *Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979) (it "would waste judicial resources . . . if the district court . . . were mandated to permit discovery, . . . take evidence and determine the merits of the case at the same time as the arbitrator is going through a substantially parallel process").

The two opt-out Plaintiffs do not change this conclusion. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20 n.22 ("In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its

---

camera cover has some defect, and thus their claims arise directly from "the sale, condition or performance" of the device.

discretion to control its docket."). "[W]hen a court determines that some claims are arbitrable while some are not, the claims that are not arbitrable must be stayed pending completion of the arbitration." *Mohebbi v. Khazen*, 2014 WL 6845477, at *12 (N.D. Cal. Dec. 4, 2014); *Wolf v. Langemeier*, 2010 U.S. Dist. LEXIS 87017, at *22-23 (E.D. Cal. Aug. 24, 2010) (staying all claims even though only five of thirteen plaintiffs agreed to arbitrate, because the plaintiffs not bound by arbitration alleged the same claims, and the stay was in the interest of economy and efficiency); *Gunawan v. Randstad Gen. Partner (US) LLC*, 2013 WL 12142565, at *3 (C.D. Cal. Dec. 16, 2013) (staying entire action because plaintiffs brought nearly identical claims); *Hikers Indus., Inc. v. William Stuart Indus. (Far E.), Ltd.*, 640 F. Supp. 175, 177 (S.D.N.Y. 1986) (staying case even though one party not subject to arbitration).

Finally, a stay is particularly appropriate because Plaintiffs filed this case as a putative class action. *See Morales v. Lexxiom, Inc.*, 2010 WL 11507515, at *11-12 (C.D. Cal. Jan. 29, 2010) (staying all claims because plaintiffs brought a class action, and thus the outcome of the arbitration proceedings could have a significant effect on the remaining claims); *In re Samsung Galaxy Litig.*, 298 F. Supp. 3d at 1290, 1303-04 ("A stay of all claims is particularly warranted in the class-action context because the complaint admits that common questions of fact and law predominate.").

## IV.   CONCLUSION

For the reasons set forth above, SEA respectfully requests that the Court compel Plaintiffs to arbitrate their claims on an individual basis, and stay this litigation pending arbitration in accordance with the parties' agreement.

DATED: July 12, 2021                    **GREENBERG TRAURIG, LLP**

By: _s/ David Jay_
    David Jay
    Richard A. Edlin
    Jaclyn DeMais
    500 Campus Drive, Suite 400
    Florham Park, NJ 07932

    ***Attorneys for Defendant Samsung***
    ***Electronics America, Inc.***